[672 NYS2d 358]

Wowaka & Sons, Inc., Respondent, v Randy I. Pardell et al., Appellants, et al., Defendant.

Second Department, April 27, 1998

APPEARANCES OF COUNSEL

*Vergilis, Stenger, Roberts & Pergament,* Wappingers Falls (*Antonia T. Lucia* of counsel), for appellants.

*Lewis & Greer, P. C.,* Poughkeepsie (*Lou Lewis* and *Daniel P. Adams* of counsel), for respondent.

## OPINION OF THE COURT

MILLER, J. P.

The instant appeals concern a dispute between a home improvement contractor and dissatisfied homeowners who terminated the contractor's services prior to completion of the job. The precise issue at bar is whether the contractor is authorized to sue on the contract where the contract is not in strict compliance with the provisions of General Business Law article 36-A. For the reasons that follow we answer that question in the affirmative. General Business Law article 36-A does not provide that a contract which is not in strict compliance with all of its provisions is unenforceable.

### I

The appellants owned a house in Poughkeepsie. They hired the respondent, a contractor, to perform significant renovations that essentially called for the demolition of much of the original structure and the erection of a substantially new dwelling.

On or about November 1, 1993, the respondent submitted a detailed, written "preliminary proposal" pursuant to which the desired renovations would be performed at an estimated cost of $285,213.

The appellants evidently accepted the preliminary proposal on November 8, 1993. Notwithstanding that the proposal itself indicated that a final contract would be forthcoming, it appears that the parties treated the preliminary proposal as the contract. Accordingly, on or about November 9, 1993, the respondent tendered a schedule of payments reciting certain construction milestones and corresponding completion dates on which installment payments would be due. That schedule, signed by the homeowners, provided as follows:

| "November 1993 | 20% | Contract Acceptance. All demolition. Removal of soil and trees to prep for installation of footings and foundations. |
| "February 1994 | 40% | All rough framing. All exterior doors and windows. Exterior siding. |
| "June 1994 | 25% | Interior finishes, walls, floors, cabinets, and appliances. |
| "September 1994 | 15% | Upon acceptance. (C.O.). |

"Please sign and date the original and return it. A copy is attached for you to keep."

The history of the respondent's performance is not outlined in the record. It appears that the respondent performed certain preliminary work prior to the signing of the contract and that the appellants paid $10,000 in October 1993. The contract was executed the following month. In accordance therewith, the plaintiff performed extensive work and the homeowners paid a total of $99,200 between October 1993 and August 1994.

It further appears that the contract was modified at least once and possibly twice. In April 1994, various items of additional construction caused the contract price to rise to $335,419. A new schedule of payments was also adopted pursuant to which the job was to be completed by March 1995. However, by June 1994 yet another schedule of payments was signed pursuant to which completion was pushed back to May 1995. By November 1994 various additional changes allegedly increased the contract price to $362,283. By letter dated December 21, 1994, the appellants terminated the respondent's

services, citing the respondent's inability "to deliver the project as per the contract".

## II

The respondent commenced the instant action in March 1995. Insofar as pertinent to this appeal, the complaint asserted two relevant causes of action against the appellants. As a first cause of action, the respondent alleged that it had entered into a written contract for work valued at $355,419. Alleging that the respondent completed 45% of the work due under the contract, the complaint asserted that the respondent was entitled to recover 45% of the contract price or $159,938.44 plus $6,864 for change orders and $4,397.45 for rough framing, for a total recovery of $171,200, less $99,200 paid on account, for a total of $72,000. As a second cause of action, the complaint alleged that the reasonable value of the work performed thus far was $171,200, of which $72,000 remained unpaid. Therefore, the second cause of action sought $72,000 in damages.

The appellants interposed an answer generally denying the allegations of the complaint. The answer set forth various affirmative defenses and counterclaims, including a first counterclaim that alleged that the $99,200 already paid exceeded the quantum meruit value of the work performed. Insofar as pertinent to this appeal, the first affirmative defense charged that the "alleged contract" between the parties was unenforceable by reason of the failure of the contract to comply with General Business Law § 771 (1) (b), (e), (f) and (h).

## III

The respondent moved to dismiss certain of the appellants' affirmative defenses and counterclaims, including the first affirmative defense. Insofar as relevant to this appeal, the respondent argued that noncompliance with the provisions of the General Business Law was not a valid ground for holding the contract to be unenforceable and that despite alleged violations of the disclosure and notice requirements of the statute, the respondent could still sue on the contract or for recovery in quantum meruit. The appellants cross-moved for summary judgment, in part, upon the ground that the contract was not enforceable due to its noncompliance with the disclosure requirements of General Business Law article 36-A.

The Supreme Court determined, *inter alia,* that the failure to strictly adhere to the notice provisions of General Business

Law § 771 did not bar a contractor's recovery on the underlying contract or in quantum meruit. The court thus dismissed the appellants' first affirmative defense, which asserted that the foregoing violations rendered the contract unenforceable.

## IV

General Business Law article 36-A is entitled "Home Improvement Contracts". It is uncontroverted that the instant contract falls within the purview of General Business Law article 36-A. General Business Law § 771 requires that all home improvement contracts must be in writing and signed by the parties thereto:

"1. * * * The writing shall contain the following:

"(a) The name, address, telephone number and license number * * * of the contractor.

"(b) The approximate dates * * * when the work will begin and be substantially completed * * *

"(c) A description of the work to be performed, the materials to be provided to the owner * * * and the agreed upon consideration for the work and materials.

"(d) A notice to the owner [regarding liens by contractors, subcontractors and materialmen] * * *

"(e) A notice to the owner [regarding escrow of payments as required by Lien Law § 71-a] * * *

"(f) If the contract provides for * * * progress payments * * * before substantial completion of the work [the contract must set forth] a schedule of such progress payments showing the amount of reach payment, as a sum in dollars and cents, and specifically identifying the state of completion of the work or services to be performed * * *

"(g) [a provision that hourly wages are not progress payments] * * *

"(h) A notice to the owner that, in addition to any right otherwise to revoke an offer, the owner may cancel the home improvement contract [within three days] * * *

"2. The writing shall be legible [and] in plain English."

In the instant case, the appellants argue that the contract does not recite the respondent's license number in violation of General Business Law § 771 (1) (a) (no issue is raised as to the respondent's license status), does not recite certain escrow notices as required by General Business Law § 771 (1) (e), does not set forth in "dollars and cents" the amounts of the periodic payments due under the contract in violation of General Busi-

ness Law § 771 (1) (f) (periodic payments were expressed in percentages based upon the completion of specific tasks), and does not provide notice of the appellants' rescission rights as required by General Business Law § 771 (1) (h). They contend that these omissions render the contract unenforceable. However, under the circumstances presented, we disagree.

It is settled that illegal contracts are generally unenforceable. However, where contracts which violate statutory provisions are merely *malum prohibitum,* the general rule does not always apply. Indeed, generally, the violation of a statutory provision will render a contract unenforceable only when the *statute so provides,* and the loss of judicial recourse would not be out of proportion to the requirements of public policy or appropriate individual punishment (*see, Lloyd Capital Corp. v Pat Henchar, Inc.,* 152 AD2d 725, *affd* 80 NY2d 124; *Rosasco Creameries v Cohen,* 276 NY 274, 278; *General Venture Capital Corp. v Wilder Transp.,* 26 AD2d 173, 178; *see also, Marketing Specialists v Bruni,* 129 FRD 35, *affd* 923 F2d 843).

In the instant matter, General Business Law article 36-A does not expressly mandate that contracts which are not in strict compliance therewith are unenforceable. Moreover, the denial of relief to the respondent in this case would be out of proportion to the requirements of public policy or appropriate individual punishment insofar as the alleged contractual omissions played no part whatsoever in inducing the appellants to enter into the contract. We therefore conclude that the respondent should not be denied its day in court to attempt to prove its entitlement to relief on its contract claims.

In *Lloyd Capital Corp. v Pat Henchar, Inc. (supra),* this Court was faced with an analogous controversy. The plaintiff therein had made certain loans under the auspices of the Small Business Administration (hereinafter SBA). The loans, however, were in violation of certain SBA regulations limiting "cost of money" charges. The plaintiff subsequently reduced various charges to bring the loans into conformity with SBA regulations.

When the defendant defaulted on the loans, the defendant and the guarantor argued that because the loans had violated SBA regulations, they were illegal and hence unenforceable. This Court rejected that argument holding: " 'Illegal contracts are generally unenforceable. Where contracts which violate statutory provisions are merely *malum prohibitum,* the general rule does not always apply. If the statute does not provide expressly that its violation will deprive the parties of their

right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy [or appropriate individual punishment] the right to recover will not be denied' (*Rosasco Creameries v Cohen,* 276 NY 274, 278). Here, neither the SBA regulations nor the underlying statute provides that a loan agreement made in violation thereof is void and unenforceable (*see, General Venture Capital Corp. v Wilder Transp.,* 26 AD2d 173, 178). Therefore, [the defendant and the guarantor] were precluded from asserting that the violation of SBA regulations rendered the loan agreement illegal and void" (*Lloyd Capital Corp. v Pat Henchar, Inc., supra,* at 727).

The foregoing analysis is equally applicable to the instant matter and clearly supports the respondent's argument that its contract is enforceable. The contract is signed, contains all material terms, and is thus otherwise valid (*see, Cobble Hill Nursing Home v Henry & Warren Corp.,* 74 NY2d 475; *2M Realty Corp. v Boehm,* 204 AD2d 620; *cf., Carmon v Soleh Boneh Ltd.,* 206 AD2d 450), and the other public policy factors to be considered do not warrant that we declare the contract unenforceable. Thus, there is no legal or logical impediment to affirming the order below insofar as it struck the affirmative defense of unenforceability (*see also, Marketing Specialists v Bruni,* 129 FRD 35, *supra).*

As the Supreme Court aptly noted, there is not a wealth of case law construing the provisions of General Business Law article 36-A. The homeowners place great reliance upon *Mindich Developers v Milstein* (227 AD2d 536) for the proposition that a contract which violates the provisions of General Business Law article 36-A is unenforceable. *Mindich,* however, is distinguishable from the instant case. In that case, where there was no written contract signed by the homeowner, we held, *inter alia,* that the failure to comply with General Business Law § 771 and the relevant provisions of the Westchester County Administrative Code precluded the respondent from recovering lost profits. However, that case should not be read to support the proposition that an otherwise valid, signed, written contract is rendered unenforceable solely by virtue of its failure to contain each and every item enumerated in General Business Law § 771. Certainly an unwritten contract which obviously ignores all of the requirements of General Business Law article 36-A, such as that in *Mindich Developers v Milstein (supra),* or one which lacks so many essential terms as to demonstrate that there was no true meeting of the par-

ties' minds, may be unenforceable (see, Carmon v Soleh Boneh Ltd., 206 AD2d 450, supra). However, there clearly was a meeting of the parties' minds in the instant case. Moreover, notwithstanding that the appellants, as homeowners, are obviously members of the class deserving of the protections of General Business Law article 36-A, none of the alleged omissions from the written contract caused them to enter into the contract, or are relevant to the appellants' reason for terminating the respondent's services, to wit, the respondent's alleged inability "to deliver the project as per the contract".

Accordingly, in the absence of an express statutory command or other cogent argument, we are not persuaded that the omissions from the instant contract should result in a per se finding that it is unenforceable. Therefore, the Supreme Court correctly concluded that the respondent is entitled to the opportunity to establish the merit of its first cause of action on the contract.

The appeal from the order dated November 7, 1996 is dismissed, as no appeal lies of right from an order entered sua sponte, and the order dated October 30, 1996 is affirmed insofar as appealed from.

RITTER, ALTMAN and KRAUSMAN, JJ., concur.

Ordered that the appeal from the order dated November 7, 1996 is dismissed, as no appeal lies of right from an order entered sua sponte; and it is further,

Ordered that the order dated October 30, 1996 is affirmed insofar as appealed from; and it is further,

Ordered that the respondent is awarded one bill of costs.