OPINION OF THE COURT
Rolando T. Acosta, J.
This action, tried before the court without a jury, arises from *441 the sale of a grocery store in Brooklyn in 1995. The case requires the court to resolve the question of whether an oral contract which purports to temporarily transfer a lottery agent’s license in violation of law is enforceable, especially in light of the standard recently set forth by the Appellate Division, Second Department, in Wowaka & Sons v Pardell (242 AD2d 1 [2d Dept]).
The Contentions of the Parties
The only fact which was not contested during the trial of this case was that the parties entered into a written contract for the sale of a Brooklyn store named Rainbow Minimart on or around April 25, 1995, plaintiff being the seller and defendant being the buyer. Plaintiff, however, is not suing defendant for a breach of the terms of the written contract. Instead, plaintiff is suing defendant for a breach of, inter alia, an oral agreement, which, according to plaintiff, addressed issues left unresolved by the written contract.
During the trial, plaintiff contended that, pursuant to the oral agreement, plaintiff, a duly licensed lottery agent, agreed to leave his lottery machine at the store following the sale. Defendant agreed, according to plaintiff, that he would make weekly payments, for the cost of the tickets sold, directly to plaintiff or to a bank account from which the New York State Division of Lottery could make regular withdrawals.
This arrangement — pursuant to which plaintiff effectively transferred his lottery license to defendant in violation of law— was expected to continue until plaintiff was able to attempt to officially transfer the lottery license to defendant. The arrangement ended abruptly, however, when, according to plaintiff, defendant failed to make several sizable payments. Plaintiff is now suing defendant for the amount which defendant failed to pay pursuant to their alleged agreement. Although plaintiff’s counsel concedes that the agreement was illegal, he argues that it is nevertheless enforceable because none of the provisions in the applicable regulatory scheme provides that a party may not recover for a breach of such contracts.
Defendant does not deny that, following his purchase of the store, the lottery machine remained at the store. He contends, however, that he never entered into an agreement with plaintiff regarding the machine and that the proceeds of the machine were controlled exclusively by one of plaintiff’s own employees — the same employee who had operated the machine prior *442 to the sale of the store. Finally, defendant’s counsel argues that even if there were such an agreement between the parties, it would have been illegal and, thus, unenforceable.
Discussion
It is well settled that contracts which violate statutory provisions are, as a general rule, unenforceable on public policy grounds where the statute which is violated is enacted to protect the public health and safety (Richards Conditioning Corp. v Oleet, 21 NY2d 895, 896-897 [1968]), or where the statute’s “ ‘purpose [is] the protection of public * * * morals or the prevention of fraud’ ”. (Benjamin v Koeppel, 85 NY2d 549, 553 [1995], quoting Galbreath-Ruffin Corp. v 40th & 3rd Corp., 19 NY2d 354, 363-364 [1967]; see also, Gutfreund v DeMian, 227 AD2d 234, 235 [1st Dept 1996].)
The rationale for refusing to enforce such contracts is not based upon a “desire to relieve a party from the obligation which he has assumed, but rather is based upon the theory that such an agreement is injurious to the interests of society in general, and that the only way to stop the making of such contracts is to refuse to enforce them”. (Village of Upper Nyack v Christian & Missionary Alliance, 143 Misc 2d 414, 421 [Sup Ct, Rockland County 1988]; see, McConnell v Commonwealth Pictures Corp., 7 NY2d 465, 469 [1960] [“ ‘ “a party to an illegal contract cannot ask a court of law to help him carry out his illegal object * * * No one shall be permitted to profit by his own fraud * * * or to found any claim upon his own iniquity” ’ ”] [citations omitted].)
Contracts which violate a statute may be enforced, however, “ ‘[i]f the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract’ ” (Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124, 127 [1992], quoting Rosasco Creameries v Cohen, 276 NY 274, 278 [1937]), and if the “loss of judicial recourse would * * * be out of proportion to the requirements of public policy or appropriate individual punishment”. (Wowaka & Sons v Pardell, 242 AD2d 1, 5 [2d Dept], supra.) Courts are also more amenable to enforcing such contracts “where there are [other] regulatory sanctions and statutory penalties in place to redress violations of the law” (Lloyd Capital Corp. v Pat Henchar, Inc., supra, 80 NY2d, at 128), or where the party who is alleged to have breached the contract is attempting to improperly use public policy “ ‘as a sword for personal gain rather than a shield for the public good.’ ” (Supra, at 128, quoting Charlebois v Weller Assocs., 72 NY2d 587, 595 [1988].)
*443 Thus, whether a particular contract is unenforceable on illegality grounds depends upon the nature of the statutory provision which is violated by the contract, and the legislative purpose for which it was enacted. Accordingly, in resolving the question of whether a particular contract is enforceable, courts “should * * * examine the particular regulatory scheme involved and decide how to further the proposes of the statute compatibly with what is fair.” (Todisco v Econopouly, 155 AD2d 441, 447 [2d Dept 1989] [Rosenblatt, J., concurring]; see also, Benjamin v Koeppel, supra, 85 NY2d, at 553-556; Thistle v Englert, 103 AD2d 268, 270-272 [4th Dept 1984].)
Here, the statutory provisions relating to the temporary transfer of the lottery machine are contained in article 34 of the Tax Law (see, § 1600 et seq.) and 21 NYCRR part 2801. Although plaintiff admits that he temporarily transferred the lottery machine in violation of the foregoing statutes, he argues that his oral contract with defendant regarding the transfer should nonetheless be enforced because none of the statutory provisions in the regulatory scheme expressly provides that such contracts are void or are otherwise unenforceable. Relying upon Rosasco Creameries v Cohen (276 NY 274, 278 [1937], supra), which was recently relied upon by the Appellate Division in Wowaka & Sons v Pardell (242 AD2d 1 [2d Dept], supra), plaintiff contends that this fact alone renders the contract here immune from challenges that it is unenforceable.
Plaintiff is correct that none of the statutory provisions contained in Tax Law § 1600 et seq., or 21 NYCRR part 2801, expressly provides that a violation of its provisions “deprive [s] the parties of their right to sue on the contract.” (Supra, at 6.) Plaintiff is wrong, however, regarding the dispositive effect of that fact in the circumstances of this case.
Although the presence of a provision which expressly renders a contract unenforceable may always be dispositive (in defendant’s favor) since it would clearly evince the legislative intent that such contracts are void (see, Bendell v De Dominicis, 251 NY 305 [1929]; Todisco v Econopouly, 155 AD2d, supra, at 447 [Rosenblatt, J., concurring]), the absence of such a voiding provision is simply one of the many factors which courts should consider in determining whether a particular contract should be enforced, and would rarely, if ever, be dispositive. (See, e.g., Benjamin v Koeppel, 85 NY2d 549, 553-556, supra [the absence of a voiding provision was only one of many factors which the Court considered in deciding that a contract with an attorney is enforceable even though the attorney was *444 unregistered in violation of law]; Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124, 128, supra [the absence of a voiding provision was only one of many factors which the Court considered in deciding that a loan agreement which violated various regulations of the Federal Small Business Administration was nonetheless enforceable].)
Indeed, the absence of a voiding provision was not at all dis-positive in Wowaka & Sons v Pardell (242 AD2d 1 [2d Dept], supra), the Second Department’s most recent decision addressing the enforceability of contracts which violate statutory provisions. In Wowaka, a home contractor sued a homeowner for the balance due pursuant to a contract which concededly violated various provisions of the General Business Law. The contract, for example, failed to contain the license number of the contractor and various notices regarding liens, escrow payments, cancellation rights, and completion dates, etc.
Although the Court, in deciding to uphold the enforcement of the contract, appeared to base its decision primarily upon the finding that the General Business Law “does not provide that a contract which is not in strict compliance with all of its provisions is unenforceable” (supra, at 2), that unremarkable find- ■ ing did not end the Court’s inquiry. Instead, the Court went on to rule that the home improvement contract was enforceable because “the other public policy factors to be considered do not warrant that we declare the contract unenforceable.” (Supra, at 7 [emphasis added].) Nor did the Court otherwise rule, explicitly or implicitly, that the presence of a voiding provision is a condition precedent to judicial refusal to enforce an illegal contract.
Furthermore, courts have often refused to enforce a contract which violates various statutory provisions even where there is no indication that the applicable statutory scheme contains a provision which renders such contracts unenforceable. (See, e.g., Richards Conditioning Corp. v Oleet, 21 NY2d 895, 896-897, supra; Gutfreund v DeMian, 227 AD2d 234, 235, supra; Bujas v Katz, 133 AD2d 730, 731 [2d Dept 1987].)
In short, notwithstanding plaintiffs arguments to the contrary, the absence of a voiding provision does not, ipso facto, save a contract executed in violation of law from being deemed unenforceable. Courts are still required to examine the nature of the statutory provision which is violated by the contract, and the legislative purpose for which it was enacted.
Upon examination of the purposes of, and the public policy considerations related to, the applicable statutory scheme here, *445 the court finds that the alleged oral agreement between plaintiff and defendant to temporarily transfer plaintiff’s lottery license to defendant is unenforceable on public policy grounds. Preliminarily, although the statutory scheme does not expressly provide that parties may not recover for the breach of a contract which purports to transfer a lottery license, the applicable statutes do expressly prohibit the type of license transfer which the parties allegedly contracted for here, as plaintiff concedes. 21 NYCRR 2801.13, entitled “Nontransferability of license”, provides, in pertinent part, that: “A license issued pursuant to this Chapter shall not be transferable. If the business to which a license is issued changes hands or the ownership or type of business undergoes a substantial change, the [New York State Lottery] [Division must be notified immediately of such change in writing. At its option the [Division may terminate or continue the license of such agent.”
The foregoing prohibition on the transfer of a lottery license is clearly designed to implement the Legislature’s intent to ensure that the New York State Lottery Division, and only the New York State Lottery Division, be entrusted with the exceedingly important decision regarding who should, and who should not, be issued a lottery license. That intent was expressed by the Legislature’s enactment of article 34 of the Tax Law, which authorizes the Division “to license agents to sell tickets for the state lottery” {id., § 1604 [b]; § 1605 [a]), to “suspend or revoke” any previously issued lottery license {id., § 1607), and to otherwise “promulgate rules and regulations governing the establishment and operation [of the lottery] * * * including * * * [t]he development of an internal security plan” {see, id., § 1604 [a] [10]). In 1994, the Legislature expanded the Division’s authority “to obtain criminal background information on any applicant for, or holder of, a lottery sales agent license” and required all applicants “to submit identifying information which shall include fingerprints” {see, id., § 1605 [e]).
Further, in carrying out its functions, the Division was given broad discretion to issue or deny lottery licenses to potential agents based upon its “opinion” regarding what “will best serve public convenience” {see, id., § 1605 [a]). At least one Court has held that this “discretionary power” should not be lightly disturbed. (Matter of Barbulean v Lynch, 203 AD2d 819, 820 [3d Dept 1994].)
Given the foregoing legislative efforts to jealously guard the Division’s delegated right to select, after an appropriate investigation, who should and. who should not be licensed to *446 sell lottery tickets, the conclusion is inescapable that the purpose of the prohibition on the transfer of a lottery license is to protect the public health, safety and morals and to prevent fraud — the very public policy purposes which warrant a court’s refusal to enforce a contract. (See, Richards Conditioning Corp. v Oleet, supra, 21 NY2d, at 896-897; Benjamin v Koeppel, 85 NY2d 549, 553, supra; cf., Molina v Games Mgt. Servs., 58 NY2d 523, 527 [1983] [“the success of any gambling operation, particularly one as broad based and as susceptible to counterfeiting and fraud as a lottery, depends upon the security of its operation * * * It was essential, therefore, that the State devise procedures that eliminated the possibility of(,) {inter alia,) fraud”].)
Under these circumstances, the court finds that the oral agreement between plaintiff and defendant relating to the temporary transfer of plaintiff’s lottery license is against public policy and is thus unenforceable. This court will not permit plaintiff to unilaterally execute an end run around the comprehensive regulatory scheme established by the Legislature.
This conclusion is strengthened by the broader public policy of the State which generally disfavors gambling (see, NY Const, art I, § 9; General Obligations Law § 5-401), but permits the lottery only because it is operated with the specific purpose of raising funds for education (see, Tax Law § 1601) and because it is thoroughly regulated (see, Tax Law § 1600 et seq.; 21 NYCRR part 2801; see generally, Molina v Games Mgt. Servs., supra, 58 NY2d, at 526-529; Ramesar v State of New York, 224 AD2d 757, 758 [3d Dept 1996]; Pando v Fernandez, 127 Misc 2d 224, 227 [Sup Ct, NY County 1984].) Indeed, in Molina (supra, at 529), the Court of Appeals ruled that in light of the foregoing public policy of the State, the regulations related to the operation of the lottery “are to be strictly construed”.
Furthermore, unlike the regulatory schemes in Benjamin v Koeppel (supra, 85 NY2d, at 555) and Lloyd Capital Corp. v Pat Henchar, Inc. (80 NY2d 124, 128, supra), the regulatory scheme here does not contain any alternative “sanctions and statutory penalties * * * to redress [the] violations of the law” which occurred. {Supra, at 128.) Judicial refusal to enforce a contract purporting to illegally transfer a lottery license is thus the only means of adequately protecting the public policy goals of the statutory scheme.
Nor can it be said here that defendant is seeking to raise illegality as “ ‘a sword for personal gain rather than a shield for *447 the public good.”’ (Supra, at 128 [citation omitted].) Indeed, it was plaintiff (not defendant) who admittedly knew that his transfer agreement was illegal and it was plaintiff (not defendant) who instigated and pursued the agreement. In addition, defendant’s primary defense in this case was that the contract was unenforceable not on public policy grounds, but on the ground that there never was any such oral agreement between plaintiff and defendant.
In short, given all of the circumstances of this case, plaintiffs “loss of judicial recourse would not be out of proportion to the requirements of public policy or appropriate individual punishment”. (Wowaka & Sons v Pardell, 242 AD2d 1, 5 [2d Dept], supra.) The alleged contract between plaintiff and defendant is therefore void and unenforceable.
Even if the court were to overlook the statutory and public policy violations caused by the oral agreement, the court would not enforce the alleged contract inasmuch as plaintiff failed to meet his burden of proof on this claim.
Accordingly, the court enters judgment in favor of defendant on any claims arising from the alleged breach of contract related to the transfer of the lottery machine.