[799 NYS2d 559]

R.A.C. GROUP, INC., et al., Respondents, v BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Defendants, and BRUCKNER LUMBER AND BUILDING SUPPLY Co., Appellant.

Second Department, July 25, 2005

244

APPEARANCES OF COUNSEL

*Louis R. Rosenthal,* Brooklyn (*Alexander M. Dudelson* of counsel), for appellant.

*Catafago Law Firm, P.C.,* New York City (*Jacques Catafago* of counsel), for respondents.

**OPINION OF THE COURT**

COZIER, J.

The instant appeal presents an issue of first impression for this Court—whether a contract which violates New York City Charter § 2604 is unenforceable. At present, no trial or appellate court has addressed that issue. We find that under the circumstances presented, the subject contract is unenforceable for public policy reasons.

The plaintiff Robert Shahid is an architect who was employed by the defendant Board of Education of the City of New York (hereinafter the BOE) from 1985 until May 1994. Shahid was assigned to the BOE Department of Real Estate, Office of Lease Management, which oversaw the implementation of the leased-facility program. Under the leased-facility program, the BOE identified privately-owned buildings suitable for conversion into school facilities and leased them from landlords. The BOE expended capital funds for the construction work required to convert the buildings into school facilities (hereinafter the build-out), and the landlord selected the contractor to perform the build-out.

In early 1994 BOE architect Clarence Jackson visited the premises at 350 Gerard Avenue in the Bronx (hereinafter the subject property), and recommended against leasing that property for school use on the ground that construction costs would be "prohibitive." The subject property was located in a manufacturing district next to the Major Deegan Expressway, and the use of that property as a school would have required, among other things, a zoning override to obtain approval for a certificate of occupancy.

However, in April 1994, Shahid visited the subject property at the alleged direction of his supervisor, overruled Jackson's recommendation, and approved that property for BOE's leased-facility program. During this time, Shahid was a senior project coordinator and supervised a staff of six architects, including Jackson. As senior project coordinator, Shahid reviewed proposed site selections for leased space and oversaw the design of build-outs.

Sometime in April 1994, Shahid, in his capacity as senior project coordinator, received a letter, dated April 20, 1994, from David Holand, the purported president of the defendant Bruckner Lumber and Building Supply Co. (hereinafter Bruckner), confirming his interest in pursuing a lease agreement with the BOE regarding the subject property. Thereafter, on May 5, 1994, the BOE and nonparty 350 Gerard Avenue Corp. (hereinafter 350 Gerard Corp.), the purported owner of the subject property, entered into a 15-year lease for $12 million, with a provision for construction on the subject property for an additional sum of $12.14 million.

Shortly thereafter, on May 20, 1994, Shahid resigned from his $46,000-a-year position with the BOE, and on July 22, 1994, entered into a contract with Bruckner in his representative capacity as president of the plaintiff R.A.C. Group, Inc. (hereinafter RAC), to serve as the project manager for the build-out project on the subject property (hereinafter the July 1994 contract).

One of Shahid's duties under the July 1994 contract was to recommend contractors as potential bidders for the subject build-out project, and to contact those contractors which Bruckner selected. Under the terms of the July 1994 contract, Bruckner, as owner, was required to pay RAC 3% of the total construction cost for the subject property (i.e. $364,200 of $12.14 million). Shahid is the owner, director, and sole stockholder of RAC.

After RAC commenced its work as project manager under the July 1994 contract, RAC received three checks (dated August 17, 1995, November 1, 1995, and November 29, 1995, respectively) totaling $72,786.78. Although Shahid cashed the first two checks totaling $46,062.33 without incident, the third check for the sum of $26,724.45 was dishonored when he attempted to cash it.

In December 1995 Bruckner terminated Shahid's services as the project manager at the direction of the BOE and pursuant to an investigation by the Inspector General's Office of the New York City School Construction Authority (hereinafter the I.G.), suggesting that Shahid violated New York City Charter § 2604 (d) (4), which prohibits former employees from ever receiving compensation at any time in relation to any particular matter with which they were personally and substantially involved in as a city employee. The I.G. also suggested that Shahid violated New York City Charter § 2604 (d) (2), which prohibits employ-

ees from appearing before their former employer for one year after termination of city employment, except for ministerial matters.

The I.G. concluded, inter alia, that 350 Gerard Corp. was neither the owner of the subject property nor an existing entity at the time that the BOE negotiated the subject lease in May 1994 or when the BOE adopted a resolution in June 1994 to go forward with the lease and build-out of the subject property. According to the I.G., 350 Gerard Corp. was incorporated on July 6, 1994, and obtained legal title to the subject property on July 13, 1994. Particularly, the I.G. found that nonparty 350 Asset Corporation (hereinafter 350 Asset) acquired the $6 million note for the subject property, foreclosed on the subject property on June 29, 1994, for $400,000, and assigned its interest in that property to 350 Gerard Corp. In addition, the I.G. found, inter alia, that Holand and/or his family members controlled both 350 Asset and 350 Gerard Corp.

The I.G. also found that Bruckner awarded a contract to nonparty American Redevelopment Enterprises (hereinafter ARE) to serve as the general contractor based upon Shahid's recommendation, and that the former principal of that entity was a convicted felon. According to the I.G., ARE and another nonparty, Creation Contracting Co. (hereinafter Creation), formed a joint venture to perform various construction projects, including the build-out project for the subject property. In fact, 350 Gerard Corp. advised the BOE officials that ARE would be the general contractor before ARE was selected as the contractor. It appeared that Creation was formed for the sole purpose of performing the build-out work for the subject property.

Further, the I.G. determined, inter alia, that Shahid similarly entered into contracts to provide project management services for two other leased-facility buildings (one in the Bronx, and one in Brooklyn), and that the aggregate value of such contracts, as well as the contract with Bruckner, was nearly $750,000. The I.G. advised the BOE, inter alia, that it could demand that the contract with Shahid be terminated, and that the BOE be reimbursed for any funds paid to 350 Gerard Corp. as part of project management services. The I.G. also informed the BOE that it referred Shahid to the Office of the Manhattan District Attorney for possible criminal prosecution.

350 Gerard Corp. subsequently retained a different contractor to complete the build-out project at the subject property, and

received $24 million after completing that project in April or May 1996.

Shahid and RAC (hereinafter the plaintiffs) then commenced this action, inter alia, to recover damages for breach of contract against, among others, Bruckner and the BOE. The action against the BOE was dismissed for failure to timely serve a notice of claim.

A nonjury trial was held in Supreme Court, Kings County, and the court concluded that the plaintiffs were entitled to recover under the contract. During the trial, a Bruckner representative acknowledged during direct examination that the lease for the subject property set forth certain postemployment restrictions with respect to former city employees.

After the trial, the Supreme Court found, inter alia, that Shahid violated New York City Charter § 2604 (d) (2) and (4), which rendered the contract at issue "at least suspect and at worst illegal." However, the Supreme Court nonetheless concluded that such violations did not render the subject contract unenforceable since New York City Charter § 2604 did not expressly provide that its violation would preclude any recovery under the contract, and the denial of relief would be wholly out of proportion to the requirements of public policy or appropriate punishment. Further, the Supreme Court concluded that it was inappropriate to allow parties to avoid their obligation under a contract where there were regulatory sanctions and statutory penalties in place to redress statutory violations. Particularly, the Supreme Court noted that New York City Charter § 2606 authorized the New York City Conflicts of Interest Board (hereinafter the board) to impose specific penalties, such as misdemeanor criminal charges, for violations under New York City Charter § 2604. Thereafter, the Supreme Court awarded judgment in favor of the plaintiffs and against Bruckner in the principal sum of $125,111.67. We reverse.

New York City Charter § 2604 (d) (2) provides that "[n]o former public servant shall, within a period of one year after termination of such person's service with the city, appear before the city agency served by [the] public servant." Under New York City Charter § 2604 (d) (4), former employees are prohibited from ever receiving any compensation at any time in relation to any particular matter with which they were personally and substantially involved in as a city employee.

A person who violates New York City Charter § 2604 is guilty of a misdemeanor, and forfeits his or her public office or employ-

ment upon conviction (*see* New York City Charter § 2606 [c]). Further, upon a determination by the board that a violation of New York City Charter § 2604 has occurred, the board is authorized to void the transaction in question, to impose fines up to $10,000, and to recommend suspension or removal from office or employment (*see* NY City Charter § 2606 [a]-[c]).

The violation of a statute which is merely malum prohibitum will not necessarily render a contract illegal and unenforceable if that statute does not expressly provide that its violation will deprive the parties of their right to sue under the contract, and the denial of relief is wholly out of proportion to the requirements of public policy (*see Benjamin v Koeppel*, 85 NY2d 549, 553 [1995]; *Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d 124, 127 [1992]; *Wowaka & Sons v Pardell*, 242 AD2d 1, 6 [1998]). Further, recovery under a contract which is malum prohibitum in nature will be upheld where regulatory sanctions and statutory penalties exist to redress statutory violations (*see Benjamin v Koeppel, supra* at 553; *Lloyd Capital Corp. v Pat Henchar, Inc., supra* at 127; *Wowaka & Sons v Pardell, supra* at 6).

Acts in violation of New York City Charter § 2604 are generally considered to be malum prohibitum in nature (*see People v de Roos*, 118 Misc 2d 445, 448 [1983]). Although New York City Charter § 2604 is silent with respect to whether the contract at issue, which violates New York City Charter § 2604 (d) (2) and (4), is unenforceable, and the record before us fails to reveal whether Shahid was subject to any penalty pursuant to New York City Charter § 2606, we conclude that under the circumstances of this case, it is against public policy to permit the plaintiffs to enforce the subject contract and to profit from their wrongdoing (*see generally McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465 [1960]).

We note that Shahid was instrumental in securing approval of the subject property for the BOE's leased-facility program, and that by virtue of his employment with the BOE and direct involvement with the build-out project at issue, he acquired valuable information regarding that project and obtained a contract to serve as the project manager for said project after terminating his employment with BOE, in violation of New York City Charter § 2604 (d) (2) and (4). Shahid resigned from his $46,000-a-year position at BOE in May 1994 and only two months thereafter he obtained a lucrative contract valued in excess of $300,000 to provide project management services for the same

leased-facility program which he monitored as a BOE· employee. The evidence herein demonstrates that Shahid does not have clean hands, and, therefore, he should be precluded from recovery (*see McConnell,* 7 NY2d at 469-471).

Further, the fact that the circumstances surrounding the conversion of the subject property into a school facility was permeated with such fraud and deceit compels a finding that the plaintiffs should not be allowed to benefit from such conduct. Public policy prohibits recovery under a contract where a party engages in fraud or other immoral conduct in tendering its performance under the contract (*see McConnell,* 7 NY2d at 469-471). As the Court of Appeals stated in *McConnell* (7 NY2d at 469), "long-settled public policy closes the doors of our courts to those who sue to collect the rewards of corruption."

As it appears that Bruckner does not have clean hands in the subject transaction, normally we would not allow Bruckner to use public policy "as a sword for personal gain rather than a shield for the public good" in seeking to preclude recovery under the subject contract (*see Charlebois v Weller Assoc.,* 72 NY2d 587, 595 [1988]). However, although barring the plaintiffs from recovering under the subject contract may result in a windfall to Bruckner, precluding such recovery is consistent with the public policy sought to be served by imposing postemployment restrictions under New York City Charter § 2604. The purpose of the postemployment restrictions of New York City Charter § 2604 "is to prevent public servants from exploiting public office for personal gain, subordinating the interests of the City to those of a prospective employer, or exerting special influence on government decision-making" (NYC Conflicts of Interest Bd Advisory Op 94-19, at 2 [1994]).

Although the conclusions of a trial court are entitled to great deference on appeal and will not be set aside unless they could not have been reached under any fair interpretation of the evidence (*see Frost v Goldberg,* 13 AD3d 409, 411 [2004]; *Northvale Prop. Assoc. v Osram Sylvania,* 300 AD2d 373 [2002]), the judgment in favor of the plaintiffs must be reversed, as any recovery would thwart the postemployment restrictions under New York City Charter § 2604 and thus, violate public policy.

Therefore, in light of the foregoing, the judgment is reversed, on the law, the order is vacated, and the complaint is dismissed.

H. Miller, J.P., Rivera and Skelos, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, the order is vacated, and the complaint is dismissed.