OPINION OF THE COURT
Joseph L. Latwin, J.
This is an action for work, labor, services and materials supplied by plaintiff to defendants in connection with the removal and repaving of a driveway on defendants’ property located within the City of Rye. The court began a trial, but it soon became evident that there was an overriding dispositive legal issue that could resolve the case. Defendants, having raised the issue in their trial memorandum, then orally, and then in a subsequent letter, moved to dismiss based on the claimed lack of compliance with General Business Law § 770 et seq. The court fixed a briefing schedule and the plaintiff submitted its memorandum of law.
Plaintiffs exhibit 1 was the contract between the parties. It is addressed to the defendants and refers to their address. It states a price and describes the work to be done. It states a payment schedule and is signed and dated by the plaintiffs president and one defendant.
The contract does not contain plaintiffs license number, nor a statement of when the work will begin or be substantially completed, the notice required by General Business Law § 771 (1) (d) or (e), or a notice of any right to revoke.
Based on these omissions from the contract, defendants move to dismiss the action.
As was sagaciously and modestly stated in Consigliere v Grandolfo (30 Misc 3d 1207[A], 2011 NY Slip Op 50011[U], *2 [Rye City Ct 2011]),
“In 1987, the Legislature added Article 36-A to the General Business Law to regulate Home Improvement Contracts. Gen. Bus. Law § 770 et seq. The statute’s plain purpose is to protect homeowners from unscrupulous, venal home improvement contractors. It protects them by, among other things, requiring a written contract containing specific language and items to be included, including granting certain rights to the homeowner. Gen. Bus. Law § 771.
“Gen. Bus. Law § 771(1) says,
“[e]very home improvement contract subject to the *793 provisions of this article, and all amendments thereto, shall be evidenced by a writing and shall be signed by all the parties to the contract. The writing shall contain the following [enumerated requirements] ....
“The items specifically required to be included in the written contract insure that the homeowner is provided with a contract that is specific and definite in terms of who is to do the work, what is to be done, when it is to be done, how much it will cost, and what remedies are available.
“The language of the statute is mandatory — every home improvement contract shall be evidenced by a writing and signed by all the parties.”
The removal and repaving of a driveway is a home improvement subject to General Business Law § 770 et seq. General Business Law § 770 (6) defines a “home improvement contract” as “an agreement for the performance of home improvement, between a home improvement contractor and an owner, and where the aggregate contract price specified in one or more home improvement contracts, including all labor, services and materials to be furnished by the home improvement contractor, exceeds five hundred dollars.” A “home improvement” includes “the repairing, remodeling, altering, converting, or modernizing of, or adding to, residential property and shall include, but not be limited to, the construction, erection, replacement, or improvement of driveways.” (General Business Law § 770 [3].) Since the contract was for driveway work in excess of $500, it was- a home improvement, subject to the statute. (See also Latwin, Caveat Contractor: General Business Law Section 770, 18 Westchester BJ 315 [1991].)
There is a large body of law barring recovery where a home improvement contractor fails to comply with consumer protection legislation. (See e.g. Posada v Nogara, 36 Misc 3d 142[A], 2012 NY Slip Op 51506[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2012]; B & F Bldg. Corp. v Liebig, 76 NY2d 689 [1990].) These cases virtually all hold that a home improvement contractor that fails to meet the requirements of the consumer protection laws cannot recover on a contract or in quantum meruit. (See also Marraccini v Ryan, 71 AD3d 1100 [2d Dept 2010] [contractor did not possess home improvement license in his own name, and thus could not recover fees from homeowners for improvements made to homeowners’ home, even though a *794 home improvement license had been issued to company operated by contractor], revd 17 NY3d 83 [2011].)
Plaintiff relies on Island Wide Heating & A.C. v Sachs (189 Misc 2d 355 [App Term, 2d Dept 2001]), and Wowaka & Sons v Pardell (242 AD2d 1 [2d Dept 1998]), claiming the failure to comply with General Business Law § 770 et seq. still permits recovery. In Island Wide, the Appellate Term upheld the trial court award of judgment for the contractor despite noncompliance with the statute. While not expressed in the decision itself, it can be inferred that the case below was a commercial claim from a District Court involving air conditioning services and thus subject to the “substantial justice” standard under Uniform District Court Act § 1804-A. That standard is not applicable in noncommercial claim civil actions, such as this case.
Wowaka & Sons proclaims that “[i]t is settled that illegal contracts are generally unenforceable” (242 AD2d at 6). It then carves out an exception: “where contracts which violate statutory provisions are merely malum prohibitum, the general rule does not always apply” (id.). It finds that “the violation of a statutory provision will render a contract unenforceable only when the statute so provides, and the loss of judicial recourse would not be out of proportion to the requirements of public policy or appropriate individual punishment” (id.). General Business Law § 770 et seq. does not express a remedy of non-enforcement for failure to comply with its terms. (See General Business Law § 773.)
“In determining whether to enforce provisions of a contract that is malum prohibitum, the court must consider several factors, central of which are the repugnance of the illegality, the express provisions of the statute violated, and the public policy considerations in refusing enforcement .... It is well established that licensing requirements that are enacted as revenue-generating measures will not defeat a contract, whereas requirements premised on protecting the life, health and property of New York citizens will counsel against contract enforcement” (Board of Mgrs. of Marbury Club Condominium v Marbury Corners, LLC, 28 Misc 3d 1240[A], 2010 NY Slip Op 51650[U], *21 [Sup Ct, Westchester County 2010], quoting Halpern v Greene, 24 Misc 3d 1251 [A], 2009 NY Slip Op 51949[U], *4 [Sup Ct, NY County 2009]).
“The rationale for refusing to enforce such contracts *795 is not based upon a desire to relieve a party from the obligation which he has assumed, but rather is based upon the theory that such an agreement is injurious to the interests of society in general, and that the only way to stop the making of such contracts is to refuse to enforce them” {id., quoting Eber Bros. Wine & Liq. Corp. v Rare Spirits, Inc., 21 Misc 3d 201, 208 [Sup Ct, Monroe County 2008]).
General Business Law § 770 et seq. is not a revenue raising measure. It requires no payment by any contractor to any government agency. Instead, it is a consumer protection disclosure regimen to protect the property of homeowners from home improvement contractors, some of whom have committed fraud or outright theft, or permitted confusion among contracting homeowners. The rationale for refusing to enforce such non-compliant contracts is based upon the theory that such non-compliant agreements are injurious to the interests of society in general, and that the only way to stop the making of such contracts is to refuse to enforce them.
Moving to the second prong of the Wowaka & Sons regimen, the court must examine whether “such an agreement is injurious to the interests of society in general, and . . . the only way to stop the making of such contracts is to refuse to enforce them” (Board of Mgrs. of Marbury Club Condominium, 28 Misc 3d 1240[A], 2010 NY Slip Op 51650[U], *21, quoting Eber Bros. Wine & Liq. Corp., 21 Misc 3d at 208).
The public policy of New York is fixed by the legislature in the statutes. (Straus & Co. v Canadian Pac. Ry. Co., 254 NY 407, 413-414 [1930].) As a statute of this state, General Business Law § 771 sets forth the public policy of this state with respect to the requirements of home improvement contracts. The legislative history shows that the legislature has already determined that non-compliant contracts are injurious to society in general. As shown above, the contract plaintiff relies upon fails to meet the specific requirements of the statute since it did not contain the required language and terms. The contract’s lack of the required terms thus contravenes the public policy of the state and is “injurious to the interests of society in general.”
The legislative history of General Business Law § 770 et seq. is replete with references to the evils sought to be remedied. In Senate Sponsor’s Letter of July 24, 1987, Senator Kehoe wrote,
“In recent years there has been increased attention *796 directed toward fraudulent activities by unscrupulous home improvement contractors. In all too many of these cases, the victims are elderly residents who have been bilked out of a substantial part of their life’s savings. The . . . bill is an attempt to provide a meaningful measure of protection for our citizens against the need of legitimate contractors to engage in their business activities. . . .
“Initially, the bill provides for a requirement for a written contract with a specification of the work to be done and the payments to be made for it. This should eliminate much of the potential for abuse” (Bill Jacket, L 1987, ch 421 at 6).
In his Legislative Program for 1987-1988, No. 9-87, Attorney General Abrams said, “Recently there has been a virtual epidemic of instances of home improvement fraud” (Bill Jacket, L 1987, ch 421 at 21). In his Memorandum for the Governor dated July 22, 1987, Attorney General Abrams noted that “[fraudulent and deceptive practices by home improvement contractors are among the leading sources of consumer complaints to the Attorney General’s Office and other consumer protection agencies” (Bill Jacket, L 1987, ch 421 at 27-28).
Despite the passage of over 26 years since General Business Law § 770 et seq. was enacted, this court has not encountered a single instance among the numerous cases brought by contractors or before taking the bench where a home improvement contract complied with the law. In fact, most contractors before this court are unaware of the law, as are many of their attorneys. This near universal failure to comply with the law’s requirements undercuts any argument that enforcement should be permitted despite noncompliance. The loss of judicial recourse would not be out of proportion to the requirements of public policy or appropriate individual punishment. It is always the contractor who prepares the contract. It is the contractor’s business to do so. It is the contractor’s obligation to prepare the contract in compliance with the law. If the contractor fails to do so, it is the contractor who should bear the burden, not the homeowner, who only occasionally may enter into a home improvement contract.
Enforcing the alleged contract would violate the very public policy considerations giving rise to the statute’s enactment. Enforcement of non-compliant contracts would “emasculate the effectiveness of the legislation promulgated . . . and . . . perpetuate the evil which it seeks to eliminate.” (Buffoleno v Den *797 ning, 82 Misc 2d 472, 473 [Civ Ct, Queens County 1975].) Here, for the court to enforce an alleged contract that on its face omits several terms required by law to protect the public would render General Business Law § 771 meaningless, especially in light of the perceived universal noncompliance.
To permit a city court to weigh whether “the loss of judicial recourse would not be out of proportion to the requirements of public policy or appropriate individual punishment” could also exceed its jurisdiction, converting it into a court of equity. City courts have no equity jurisdiction. (NY Const, art VI, § 17; see TR Constr. v Fischer, 26 Misc 3d 1238[A], 2010 NY Slip Op 50462[U] [Watertown City Ct 2010].) Furthermore, for a city court to infer an equitable remedy where the legislature has been silent could violate the separation of powers. If the legislature had intended, despite the failure to comply with General Business Law § 770 et seq., to permit recovery nevertheless through an equitable remedy in a city court, it could have easily done so. A court cannot by implication supply in a statute a provision which is reasonable to suppose the legislature intended intentionally to omit — especially when it is beyond the court’s constitutional jurisdiction. When it is urged that a particular statute should be construed to cover a matter not expressly mentioned in the act, the courts frequently assert that, if the legislature had intended the statute to include the matter in question, it would have been easy for the legislature to have said so and to have expressly included it. The court reasons that the failure of the legislature to include the matter within the scope of the act indicates that its exclusion was intended, and the court refuses to insert the matter in the statute on the ground that it has no power to make such judicial legislation. There is no basis for the City Court to assume equitable jurisdiction in cases under General Business Law § 770 et seq.
Accordingly, the court finds that the failure to comply with the express provisions of General Business Law § 770 et seq. bars recovery, and it is ordered and adjudged that the indorsed complaint be and hereby is dismissed.