Desmond, Ch. J.
The appeal is by defendant from so much of an Appellate Division, First Department, order as affirmed that part of a Special Term order which struck out two defenses in the answer.
Plaintiff sues for an accounting. Defendant had agreed in writing ithat, if plaintiff should succeed in negotiating a contract with a motion-picture producer whereby defendant would get the distribution rights for certain motion pictures, defendant . would pay plaintiff $10,000 on execution of the contract between defendant and the producer, and would thereafter pay plaintiff a stated percentage of defendant’s gross receipts from distribution of the pictures. Plaintiff negotiated the distribution rights for defendant and defendant paid plaintiff the promised $10,000 but later refused to pay him the commissions or to give him an accounting of profits.
Defendant’s answer contains, besides certain denials and counterclaims not now before us, two affirmative defenses the sufficiency of which we must decide. In these defenses it is asserted that plaintiff, without the knowledge of defendant or of the producer, procured the distribution rights by bribing a representative of the producer and that plaintiff agreed to pay and did pay to that representative as a bribe the $10,000 which *469 defendant paid plaintiff. The courts below (despite a strong dissent in the Appellate Division) held that the defenses were insufficient to defeat plaintiff’s suit. Special Term’s opinion said that, since the agreement sued upon — between plaintiff and defendant — was not in itself illegal, plaintiff’s right to be paid for performing it could not be defeated by a showing that he had misconducted himself in carrying it out. The court found a substantial difference between this and the performance of an illegal contract. We take a different view. Proper and consistent application of a prime and long-settled public policy closes the doors of our courts to those who sue to collect the rewards of corruption.
New York’s policy has been frequently and emphatically announced in the decisions. “ ‘It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose ’ (Stone v. Freeman, 298 N. Y. 268, 271, citing the leading cases). The money plaintiff sues for was the fruit of an admitted crime and ‘ no court should be required to serve as paymaster of the wages of crime ’ (Stone v. Freeman, supra, p. 271). And it makes no difference that defendant has no title to the money since the court’s concern ‘ is not with the position of the defendant ’ but with the question of whether ‘ a recovery by the plaintiff should be denied for the sake of public interests ’, a question which is one ‘ of public policy in the administration of the law ’ (Flegenheimer v. Brogan, 284 N. Y. 268, 272). That public policy is the one described in Riggs v. Palmer (115 N. Y. 506, 511-512): ‘ No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes ’ ” (Carr v. Hoy, 2 N Y 2d 185,187).
We must either repudiate those statements of public policy or uphold these challenged defenses. It is true that some of the leading decisions (Oscanyan v. Arms Co., 103 U. S. 261; Stone v. Freeman, 298 N. Y. 268) were in suits on intrinsically illegal *470 contracts but the rule fails of its purpose unless it covers a case like the one at bar. Here, as in Stone v. Freeman and Carr v. Hoy (supra), the money sued for was (assuming the truth of the defenses) “ the fruit of a crime.” To allow this plaintiff to collect his commissions would be to let him “ profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his own iniquity, or to acquire property by his own crime ” (Riggs v. Palmer, 115 N. Y. 506, 511). The issue is not whether the acts alleged in the defenses would constitute the crime of commercial bribery under section 439 of the Penal Law although it appears that they would. ‘ ‘ A seller cannot recover the price of goods sold where he has paid a commission to an agent of the purchaser (Sirkin v. Fourteenth Street Store, 124 App. Div. 384); neither could the agent recover the commission, even at common law and before the enactment of section 384-r of the Penal Law (now § 439) ” (Judge Crane in Reiner v. North American Newspaper Alliance, 259 N. Y. 250, 261). The Sirkin opinion (124 App. Div. 384) has been cited with approval by this court in Merchants’ Line v. Baltimore & Ohio R. R. Co. (222 N. Y. 344, 347) and Morgan Munitions Supply Co. v. Studebaker Corp. (226 N. Y. 94, 99). In unmistakable terms it forbids the courts to honor claims founded on commercial bribery.
We are not working here with narrow questions of technical law. We are applying fundamental concepts of morality and fair dealing not to be weakened by exceptions. So far as precedent is necessary, we can rely on Sirkin v. Fourteenth St. Store (124 App. Div. 384, supra) and Reiner v. North American Newspaper Alliance (259 N. Y. 250, supra). Sirhin is the case closest to ours and shows that, whatever be the law in other jurisdictions, we in New York deny awards for the corrupt performance of contracts even though in essence the contracts are not illegal. Sirkin had sued for the price of goods sold and delivered to defendant. Held to be good was a defense which charged that plaintiff seller had paid a secret commission to an agent of defendant purchaser. There cannot be any difference in principle between that situation and the present one where plaintiff (it is alleged) contracted to buy motion-picture rights for defendant but performed his covenant only by bribing the seller’s agent. In the Reiner case (supra), likewise, the plaintiff had fully performed the services required by his agreement with *471 the defendant but was denied a recovery because his performance had involved and included “ fraud and deception ” practiced not on defendant but on a third party. It is beside the point that the present plaintiff on the trial might be able to prove a prima facie case without the bribery being exposed. On the whole case (again assuming that the defenses speak the truth) the disclosed situation would be within the rule of our precedents forbidding court assistance to bribers.
It is argued that a reversal here means that the doing of any small illegality in the performance of an otherwise lawful contract will deprive the doer of all rights, with the result that the other party will get a windfall and there will be great injustice. Our ruling does not go as far as that. It is not every minor wrongdoing in the course of contract performance that will insulate the other party from liability for work done or goods furnished. There must at least be a direct connection between the illegal transaction and the obligation sued upon. Connection is a matter of degree. Some illegalities are merely incidental to the contract sued on (see Messersmith v. American Fid. Co., 187 App. Div. 35, affd. 232 N. Y. 161; De Persia v. Merchants Mut. Cas. Co., 268 App. Div. 176, affd. 294 N. Y. 708; Ferkin v. Board of Educ., 278 N. Y. 263, 268). We cannot now, any more than in our past decisions, announce what will be the results of all the kinds of corruption, minor and major, essential and peripheral. All we are doing here is labeling the conduct described in these defenses as gross corruption depriving plaintiff of all right of access to the courts of New York State. Consistent with public morality and settled public policy, we hold that a party will be denied recovery even on a contract valid on its face, if it appears that he has resorted to gravely immoral and illegal conduct in accomplishing its performance.
Perhaps this application of the principle represents a distinct step beyond Sirkin and Reiner (supra) in the sense that we are here barring recovery under a contract which in itself is entirely legal. But if this be an extension, public policy supports it. We point out that our holding is limited to cases in which the illegal performance of a contract originally valid takes the form of commercial bribery or similar conduct and in which the illegality is central to or a dominant part of the plaintiff’s whole course of conduct in performance of the contract.
*472 There is no pertinence here of the rule which makes such defenses unavailable to one who is a mere depository or escrowee — that is, one who is holding money or goods for one of the parties without himself being a party to the transaction sued upon (see Southwestern Shipping Corp. v. National City Bank of N. Y., 6 N Y 2d 454). That exception is used when, in execution or satisfaction of an illegal transaction, one of the parties thereto turns over money or property to a third person (not a party to the illegal deal) for the- use of one who is a party. In our case there were two parties only — plaintiff and defendant. There is no third person holding money or property.
The sufficiency of defendant’s counterclaim (for the return of its $10,000) was litigated below but it is not before us on this appeal.
The order appealed from should be reversed, with costs, the certified question answered in the negative, and plaintiff’s motion, insofar as it attacks the sufficiency of the two separate defenses, should be denied.