**SWIG WEILER AND ARNOW MANAGEMENT CO., INC., Plaintiff,**

v.

**Jeffrey STAHL, Lewis Stahl, Primo Construction, Inc., Coordinated Metals, Inc., Carmine Pistone, Theresa Pistone, and John Does 1 through 3, Defendants.**

**No. 89 Civ. 2290 (MGC).**

United States District Court, S.D. New York.

March 31, 1993.

See also 817 F.Supp. 400.

tember 16, 1988. Swig Weiler relies on information obtained from TCS to support the RICO claims. (Lorin Aff., Ex. O, p. 2.)

Shea & Gould, New York City by Lauren J. Wachtler, Ira Daniel Tokayer, for plaintiff Swig Weiler & Arnow Management Co., Inc.

Tenzer Greenblatt Fallon & Kaplan, New York City by Edward L. Sadowski, Paul J. Giacomo, Jr., for defendant Coordinated Metals, Inc.

## MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff Swig Weiler and Arnow Management Co., Inc. ("Swig Weiler") sues defendants Lewis Stahl, Jeffrey Stahl, Primo Construction, Inc. ("Primo") and Coordinated Metals, Inc. ("Coordinated") for violations of RICO. Plaintiff also asserts various pendent state law claims. Coordinated, a construction contractor, asserts a counterclaim for money due under a contract between Coordinated and Swig Weiler, and moves for partial summary judgment on the counterclaim in the amount of $198,932.66. All discovery has been completed, and the case is ready for trial. Swig Weiler has asserted two affirmative defenses to Coordinated's counterclaim, illegality (bribery) and fraud. Coordinated argues that Swig Weiler cannot prove essential elements of its affirmative defenses, and therefore Coordinated is entitled to partial summary judgment. For the reasons discussed below, Coordinated's motion for partial summary judgment is granted.

### BACKGROUND

On January 3, 1985 Swig Weiler, as managing agent for the owners of 111 West 40th Street, entered into a contract (the "Contract") with Coordinated to replace the facade of the building. Lewis Stahl, Swig Weiler's executive vice president, executed the Contract on behalf of Swig Weiler. Lewis Stahl was then the husband of Ruth Stahl who is the daughter of Robert Arnow, the president and owner of Swig Weiler.

The Contract provided for a base price of $2,231,000. Following execution of the Contract, Lewis Stahl approved extras totalling $396,280. Swig Weiler has challenged $348,180 of these extras on the ground that they represented charges for work which Coordinated did not perform for Swig Weiler, and for work which Coordinated had known was required but purposely did not include in its estimate prior to execution of the contract. Swig Weiler withheld from Coordinated $348,180, the amount of disputed extras, as well as an additional $198,932.66. Coordinated moves for partial summary judgment in the amount of $198,932.66. Swig Weiler has asserted two affirmative defenses to Coordinated's counterclaim, bribery and fraud.

First, Swig Weiler asserts that Coordinated procured the Contract by bribing Lewis Stahl and continued to pay bribes to Stahl after it obtained the Contract. Second, Swig Weiler alleges that Coordinated committed fraud in the performance of the Contract by billing Swig Weiler for work which it did not perform for Swig Weiler.

Coordinated concedes that it installed windows valued at approximately $20,000 at the Stahls' personal residence prior to execution of the contract, and later billed those windows to Swig.Weiler. (Tokayer Aff., Ex. 17, p. 93; 10/9/92 Tr. at 39.) Coordinated also performed work at Lewis Stahl's yeshiva which it billed to Swig Weiler. (*Id.*, Ex. 27, p. 314.) Following execution of the Contract, Coordinated submitted a change order to Swig Weiler in the amount of $172,000. Coordinated admits that it had agreed with Lewis Stahl to reduce its bid on the job by $172,000 on the understanding that Lewis Stahl would later approve change orders in that amount. (*Id.*, Ex. 18, pp. 202–04.) Finally, Coordinated concedes that it paid Todd Stern Communications Systems, Inc. ("TCS") [1] $150,200 pursuant to an invoice which represented that TCS had done work at 111 West 40th Street that Coordinated knew TCS had not done, and reimbursed itself by submitting a bill to Swig Weiler in that amount. (*Id.*, Ex. 23.) Howard Isaacs, Coordinated's president, testified in his deposition that on each occasion he was following the billing instructions of Lewis Stahl. TCS paid the money it received from Coordinated to Lewis and Jeffrey Stahl. With respect to the payment to TCS, Isaacs testified that he was not aware that Coordinated was being used to funnel payments to the Stahls. He says that Lewis Stahl told him that TCS was doing work on Robert Arnow's house in the Caribbean and that Arnow wanted those bills run through 111 W. 40th Street. (*Id.*, Ex. 22.) Arnow denies owning a house in the Caribbean or authorizing this billing arrangement. (*Id.*, Ex. 34, p. 415.)

### DISCUSSION

1. *Bribery*

■ Swig Weiler argues that Coordinated procured the Contract through bribery, and

continued to pay bribes to Lewis Stahl after it obtained the Contract. As evidence of bribes paid to procure the Contract, Swig Weiler points to the fact that prior to execution of the Contract, Coordinated supplied windows valued at approximately $20,000 to Lewis and Ruth Stahl's personal residence. Under New York law, a contract procured through bribery is not enforceable. *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 199 N.Y.S.2d 483, 485, 166 N.E.2d 494, 495 (1960).

Penal Law § 180.03 provides:

A person is guilty of commercial bribing in the first degree when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary *without the consent of the latter's employer or principal,* with intent to influence his conduct in relation to his employer's or principal's affairs, and when the value of the benefit conferred or offered or agreed to be conferred exceeds one thousand dollars and causes economic harm to the employer or principal in an amount exceeding two hundred fifty dollars.

N.Y. Penal Law § 180.03, McKinneys 1988. (emphasis added).

■ An essential element of the statutory definition of commercial bribery and thus Swig Weiler's affirmative defense is that Coordinated supplied the windows without Swig Weiler's consent. Swig Weiler has offered no evidence to show that Robert Arnow *did not consent* to the furnishing of windows to his daughter's home in Riverdale at the expense of Swig Weiler.

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), the Supreme Court articulated the standard for summary judgment that applies in this case:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that

---

**1.** Swig Weiler released TCS from liability on

September 16, 1988.

party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

The windows were supplied by Coordinated to the daughter of the president and owner of the employer and approved by the son-in-law who had the apparent authority to do so. In the face of this circumstantial evidence of consent, the failure of Swig Weiler to offer any evidence that this benefit was conferred without the employer's consent, an essential element of its affirmative defense of bribery, eliminates that defense as a barrier to summary judgment for Coordinated on this part of the counterclaim.

Swig Weiler also argues that Coordinated paid bribes to Lewis Stahl after it obtained the Contract. Swig Weiler claims that Coordinated funneled a payment of $150,200 to Lewis Stahl through TCS and that Coordinated performed work at Lewis Stahl's yeshiva, at Stahl's request, for which it did not receive payment from Stahl.

Swig Weiler has established that Coordinated paid TCS for work which it knew TCS did not perform. However, Swig Weiler has proffered no evidence[2] that Coordinated knew that TCS transmitted the amount of that payment to Lewis Stahl. Thus Swig Weiler has proffered no evidence that Coordinated conferred this benefit on Lewis Stahl. With respect to the work performed at Stahl's yeshiva, Swig Weiler has offered no evidence that this benefit was conferred without the employer's consent. Thus, since Swig Weiler, the party with the burden of proof, has failed to raise a genuine issue of disputed fact with respect to essential elements of its affirmative defense of bribery, Swig Weiler cannot defeat Coordinated's motion for partial summary judgment on this ground.

2. *Fraud*

Swig Weiler has also raised fraud as an affirmative defense. As evidence of fraud,

Swig Weiler points to invoices submitted by Coordinated with overcharges of $348,180.

█ Under New York law, fraud in the performance of a contract renders the contract unenforceable. *Newmark & Co. Real Estate, Inc., v. C & A Trimming Corp.*, 134 Misc.2d 371, 511 N.Y.S.2d 205 (City Civ.Ct. 1987). To establish fraud, Swig Weiler must prove (1) a misrepresentation (2) as to a material fact (3) which was false (4) and known to be false (5) that the representation was made for the purpose of inducing (6) the rightful reliance of the other party (7) who was ignorant of its falsity and (8) to his injury. *Brown v. Lockwood*, 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (2d Dep't 1980) (citations omitted). Coordinated argues that Swig Weiler cannot prove that it was injured by the invoices Coordinated submitted.

█ To prevail on the affirmative defense of fraud, Swig Weiler must show actual pecuniary loss. *Rosen v. Spanierman*, 894 F.2d 28, 34 (2d Cir.1990) (citations omitted). Swig Weiler does not dispute that once it discovered the overbillings by Coordinated, it withheld payment to Coordinated substantially in excess of the amount of the overbillings. Therefore, Swig Weiler had no pecuniary loss resulting from overbillings by Coordinated, and Swig Weiler cannot defeat Coordinated's motion for partial summary judgment on the ground of fraud in the performance of the contract.

### CONCLUSION

For the foregoing reasons, Coordinated's motion for partial summary judgment on its counterclaim is granted.

SO ORDERED.

---

2. Following its release, TCS provided Swig Weiler with detailed information about the alleged bribery and fraud scheme. (Lorin Aff., Ex. O, Rico Case Stmt, p. 3.)