

Villanova University School of Law
Villanova University School of Law Digital Repository

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-2007

# Pharm Sales v. JWS Delavau Co Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3693

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Pharm Sales v. JWS Delavau Co Inc" (2007). *2007 Decisions.* Paper 1724.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1724

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

NOS.  05-3693 and 05-3923

—————

PHARMACEUTICAL SALES
CONSULTING CORPORATION,
Appellant in No. 05-3693

v.

ACCUCORP PACKAGING, INC.
and J.W.S. DELAVAU CO., INC.
Defendant/Third-Party Plaintiff

v.

JOHN S. SADLON; LAURA MICELLI
Third-Party Defendants

Accucorp Packaging, Inc. and
J.W.S. Delavau Co., Inc.,
Appellants in No. 05-3923

(Caption Amended Per Clerk Order dated 11/03/05)

—————

On Appeal From the United States
District Court For the District of New Jersey
(D.C. Civil Action No. 95-cv-05961)
District Judge:  Hon. Mary Little Cooper

—————

Argued: November 8, 2006

———————

Alain Liebman
Stern & Kilcullen
75 Livingston Avenue
Roseland, NJ  07068

Jane J. Felton (Argued)
Greenbaum, Rowe, Smith & Davis
P.O. Box 5600
Metro Corporate Campus One
Woodbridge, NJ  07095
  Attorneys for Appellant/Cross Appellee

Richard S. Hyland (Argued)
Stacy A. Fols (Argued)
Montgomery, McCracken, Walker & Rhoads
457 Haddonfield Road
Liberty View, 6th Floor, Suite 600
Cherry Hill, NJ  08002
  Attorneys for Appellees/Cross Appellants

———————

<u>OPINION OF THE COURT</u>

———————

STAPLETON, <u>Circuit Judge</u>:

Pharmaceutical Sales Consulting Corp. ("PSCC") appeals from an adverse

judgment on its contract claims against J.W.S. Delavau Co., Inc., and Accucorp

2

Packaging, Inc. (collectively "Delavau"), entered after a bench trial. Delavau cross-appeals from an adverse judgment on its contract counterclaims against PSCC and for a denial of an application for attorney fees. The District Court had jurisdiction under 28 U.S.C. § 1332,[1] and this court has jurisdiction under 28 U.S.C. § 1291. We will affirm the judgment on PSCC's contract claims, reverse the judgment on Delavau's counterclaims, and remand for further proceedings.

I

John Sadlon is a former employee of Lederle Laboratories and the president of PSCC. Sadlon worked for Lederle from 1979 to 1987. During that time, he met Richard DiBenedetto Sr., who was Lederle's director of quality assurance. In that capacity, DiBenedetto Sr. would review the work of outside contractors, and was part of a four-person inspection team charged with approving outside contractors.

After leaving Lederle in 1987, Sadlon worked at two other pharmaceutical companies and later founded PSCC. Through PSCC, Sadlon worked as a broker between contractors and pharmaceutical companies. In October of 1990, Sadlon contacted Delavau, a manufacturer of pharmaceutical products, to ask if it would be interested in doing business with an unnamed client. Sadlon and Delavau entered into a contract under

---

[1]Pennsylvania is the state of incorporation and the principal place of business of Delavau and Accucorp. Although PSCC did not have a certificate of incorporation, the District Court recognized it as a New Jersey corporation for the purposes of this litigation under the doctrine of corporation of estoppel. *Pharm. Sales & Consulting Corp v. J.W.S. Delavau Co.*, 59 F. Supp. 2d 398, 405-08 (D.N.J. 1999).

which Sadlon would receive a 5% commission on any business he could bring to Delavau from his unnamed client, which turned out to be Lederle.

In late 1991, Sadlon made Laura Micelli his only business partner at PSCC, and he and Micelli orally agreed that she would get 50% of PSCC's brokering revenue. There is no evidence in the record that Micelli had any expertise relevant to Sadlon's business, and the only evidence of any work she did for PSCC was that she created some spreadsheets and was involved in a few unsuccessful attempts to sell an idea for a home blood test kit to the laboratory company for which she worked. At the time Sadlon made Micelli his partner, she was engaged to Richard DiBenedetto Jr., who was living with his father, Richard DiBenedetto Sr.[2] DiBenedetto Jr. and Micelli married in 1992.

In February and March of 1992, the District Court found, Sadlon and DiBenedetto Sr. reached an agreement in which DiBenedetto Sr. would use his position at Lederle to assist PSCC in getting business for Delavau from Lederle, and in return, Sadlon would give 50% of his brokering commissions to Micelli after she married DiBenedetto Jr.

In February of 1992, Sadlon contacted Delavau, referring to an unnamed "special consultant" who would assist him in securing business for Delavau from Lederle. In March, he indicated to Ron Leff of Delavau that his "special consultant" needed to tour

---

[2] The District Court found a pattern of financial instability surrounding DiBenedetto's son, which included periods of unemployment, failed business ventures, and a guilty plea for conspiracy to commit wire fraud by inflating and falsifying real-estate appraisals. DiBenedetto's son declared bankruptcy in November 1992, declaring over four million dollars in debt, including $350,000 owed to DiBenedetto for loans for real-estate transactions, room and board, gambling debts, and hospital bills.

the Delavau facility that month. On March 21, 1992, Sadlon, DiBenedetto Sr., and DiBenedetto Jr. traveled to the Delavau facility, and DiBenedetto Sr. toured it. Later that year, a team of four people from Lederle, which included DiBenedetto Sr., toured the Delavau facility. DiBenedetto Sr.'s colleagues at Lederle were unaware of his prior visit to the Delavau facility.

In July of 1992, PSCC and Delavau entered into the contract at issue in this case. Under the terms of the contract, PSCC would represent Delavau in negotiations with Lederle, and in exchange Delavau would pay a commission of 5% of any business it received from Lederle. PSCC also agreed that any Lederle business in which it was in any way involved would be exclusively presented to Delavau, and that Delavau would have a right of first refusal. In the event Lederle did not choose Delavau as the supplier for a product that Delavau was capable of making, PSCC agreed to pay Delavau 2% of any sales it earned from placing that business with another supplier. The parties agreed that New Jersey law would govern the contract and that "[i]f any legal action is brought by any of the parties [to the contract], . . . the party in whose favor final judgment shall be entered shall be entitled to recover from the other party reasonable attorney's fees in addition to any other relief which may be granted."

Between July 1992 and 1995, Delavau did a substantial amount of business with Lederle—brokered by PSCC—and PSCC collected approximately $1 million in commissions from Delavau. Sadlon did not begin giving Micelli her 50% cut until after she married DiBenedetto Jr. in December of 1992. Thereafter, she received $461,000

5

from PSCC between 1993 and 1995, which was deposited into a joint bank account held by Micelli and DiBenedetto Jr.

In 1993, Delavau learned that PSCC had brokered deals with Lederle for another company, Testpak, Inc., but continued to pay PSCC. In 1995, Delavau learned that PSCC had tried to broker deals between Lederle and American Vitamin Company. After learning of this, Delavau stopped paying PSCC's commissions. PSCC responded by bringing this breach of contract action against Delavau in state court. Delavau removed the case to the United States District Court for the District of New Jersey and asserted counterclaims for breach of contract. In March of 2000, after learning of Micelli's relationship with DiBenedetto Jr., Delavau sought leave to amend its answer to raise a commercial bribery defense to PSCC's claims for breach of contract. The magistrate judge assigned to the case denied Delavau's motion, but the District Court reversed and allowed Delavau to amend its answer.

Following a bench trial, the District Court found in favor of Delavau on PSCC's breach of contract claims based on its commercial bribery defense. It found in favor of PSCC on Delavau's counterclaims, holding that Delavau would be unjustly enriched if permitted to recover under the contract. Finally, the District Court declined to award attorney fees to either party under the fee-shifting provision of the contract. The District Court denied PSCC's motion to reconsider and entered a final order. This appeal and

6

cross-appeal followed.[3]

II

When one party to a contract commits a crime or a tort in the course of performance, if the wrongdoing is sufficiently serious and bears a sufficiently direct connection to the contract, courts may excuse the innocent party from his obligation to perform. *See McConnell v. Commonwealth Pictures Corp.*, 166 N.E.2d 494, 497 (N.Y. 1960); 8 Richard A. Lord, *Williston on Contracts*, § 19:40, at 378-80 (4th ed. 1998); Restatement of Contracts § 512 (1932). The New Jersey Superior Court has recognized commercial bribery as a defense to an otherwise valid contract. *Jaclyn, Inc. v. Edison Bros. Stores, Inc.*, 406 A.2d 474, 483-85 (N.J. Super. Law Div. 1979).

The New Jersey commercial bribery statute provides that:

> A person commits a crime if he solicits, accepts or agrees to accept any benefit as consideration for knowingly violating or agreeing to violate a duty of fidelity to which he is subject as:
> [a]n agent, partner or employee of another [or] . . .
> [a]n officer, director, manager or other participant in the

---

[3]We exercise plenary review over legal determinations. *Shire U.S. Inc. v. Barr Labs. Inc.*, 329 F.3d 348, 352 (3d Cir. 2003). We review factual determinations under a clearly erroneous standard. *Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 53 (3d Cir. 2001). A finding of fact is clearly erroneous when it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353 (3d Cir. 2002) (quoting *Hoots v. Pennsylvania*, 703 F.2d 722, 725 (3d Cir. 1983)). Sitting in diversity, we are to apply state law as interpreted by the state's highest court, and where the state's highest court has not addressed the issue, we "must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." *Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 274 (3d Cir. 1995).

7

> direction of the affairs of an incorporated or unincorporated
> association . . . .
> A person commits a crime if he confers, or offers or agrees to confer,
> any benefit the acceptance of which would be criminal under this section.

N.J.S.A. § 2C:21-10.

After making detailed findings of fact, the District Court held that Delavau carried its burden of proving that PSCC committed commercial bribery in the course of performing its contract with Delavau. The District Court found that PSCC paid $461,000 to the daughter-in-law of DiBenedetto Sr. in exchange for DiBenedetto Sr.'s promise to steer Lederle's business to Delavau and thereby create commissions for PSCC. In doing so, the District Court held, DiBenedetto Sr. violated his duty of fidelity owed as an employee, manager, and agent of Lederle. On the basis of its finding that PSCC committed commercial bribery in the course of performing its contract with Delavau, the District Court held that PSCC was not entitled to pursue a claim for breach. On appeal, PSCC argues that this was in error.

## A

First, PSCC argues that under the facts as found by the District Court, DiBenedetto Sr. did not receive a "benefit" within the meaning of the New Jersey commercial bribery statute.[4] Specifically, PSCC argues that the District Court erred by relying on the language of N.J.S.A. § 2C:21-8.1(a) to define "any benefit," and that a

---

[4]PSCC also argues that the District Court found a violation of the commercial bribery statute on the basis of insufficient evidence. We have reviewed the record and find the evidence sufficient to support the judgment below.

8

proper definition of the term would exclude benefits of the type that DiBenedetto Sr. received.

In defining "any benefit," the District Court relied on the language of N.J.S.A. § 2C:21-8.1(a), which states as follows:

> As used in chapter 21, unless a different meaning plainly is required: "Benefit derived" means the loss resulting from the offense or any gain or advantage to the actor, or coconspirators, or *any person in whom the actor is interested*, whichever is greater, whether loss, gain or advantage takes the form of money, property, commercial interests or anything else the primary significance of which is economic gain . . . . The benefit derived or resulting harm in violation of chapter 21 shall be determined by the trier of fact.

(emphasis added). We agree with the District Court that the New Jersey commercial bribery statute, section 2C:21-10, should be read in conjunction with section 2C:21-8.1(a). Although the commercial bribery statute uses the word "benefit" rather than "benefit derived," the most natural reading of the phrase "any benefit" is not narrower than "benefit derived."

PSCC notes, however, that the phrase "benefit derived" was once part of the commercial bribery statute, but was eliminated when the legislature amended the statute in 1986. Such an amendment, PSCC argues, must be regarded as a deliberate choice by the legislature to reject the definition of "benefit derived" in section 2C:21-8.1(a). We do not find this argument persuasive, and we agree with the District Court that the 1986 amendments to the statute did not narrow the definition of the offense, but instead equated the penalties for offering and accepting a bribe.

9

Because we agree with the District Court's construction of the statutory term "benefit," we agree with its holding that DiBenedetto Sr. accepted a "benefit" within the meaning of the statute. As the District Court found the facts, DiBenedetto Sr. accepted a benefit in the form of $461,000 from PSCC handed over to his daughter-in-law and placed in a joint bank account with his son. Thus, PSCC gave an indirect benefit to two persons in whom DiBenedetto Sr. had an interest—his son and his daughter-in-law—constituting a benefit under the statute.

B

Second, PSCC contends that the District Court erroneously relied on a private employee conduct policy instead of New Jersey law in finding PSCC violated a duty of fidelity.[5] We find this argument unpersuasive. Although PSCC is correct to note that courts have expressed some concern about the expansion of the reach of penal statutes by private companies' internal policies, it does not demonstrate that those concerns apply with any force in this case. DiBenedetto Sr.'s actions constituted a breach of an employee's duty of fidelity within any reasonable construction of the statute. *See United*

---

[5]The District Court found that DiBenedetto's conduct violated both the pre-1994 and post-1994 conduct policies in place at Lederle. The policy effective between 1991 and 1994 required all employees to maintain the highest ethical business and professional standards, and to avoid activities that might conflict with the best interests of the company. It prohibited giving any gift or favor to any person or organization having a business relationship with Lederle. The policy adopted in 1994 prohibited the holding of a significant financial interest by an employee or any member of the employee's immediate family in the business of any supplier of Lederle, or of any competitor with, or customer of Lederle, when the employee was in a position to influence the relationships between the Company and the supplier, customer, or competitor.

*States v. Lee*, 359 F.3d 194, 204-05 (3d. Cir. 2004) (the statute reaches all breaches of duty, including the duty to refrain from self-dealing), *cert. denied*, 543 U.S. 955 (2004); *Cemeco, Inc. v. Gedicke*, 724 A.2d 783, 789 (N.J. 1999) (employee's self-dealing may breach the duty of loyalty). The District Court's factual findings on this point were not clearly erroneous, and we agree with the District Court that the facts as found establish a breach of a duty of fidelity within the meaning of the New Jersey commercial bribery statute.

C

Third, PSCC contends that even if it committed commercial bribery within the meaning of the statute, the District Court erred by allowing Delavau to escape its contractual obligations as a consequence. As noted, New Jersey courts recognize commercial bribery as a defense in contract actions. *Jaclyn*, 406 A.2d at 482-85. PSCC argues, however, that because the text of the New Jersey commercial bribery statute does not include unenforceability of contracts as a remedy for violations of the statute, the District Court erred by allowing Delavau to use the statute as a defense to PSCC's claims for breach. In support of its argument, PSCC invokes cases such as *Schuran v. Walnut Hill Associates*, 606 A.2d 885 (N.J. Super. Law. Div. 1991), and *Bruce's Juices, Inc. v. American Can Co.*, 330 U.S. 743 (1947). We do not agree.

In *Bruce's Juices*, the Supreme Court declined to void the contract at issue because the statute (the Robinson-Patman Act) included provisions for *civil* enforcement, by which a person injured by a violation of the Act could sue and recover triple damages and

11

attorney fees. 330 U.S. at 750. Under those circumstances, the Supreme Court concluded that Congress meant for the remedies prescribed in the Robinson-Patman Act to be the exclusive remedies available to aggrieved parties. *Id.* at 751-57.

Similarly, in *Schuran*, the New Jersey Superior Court found that the New Jersey legislature had addressed the question of the scope of the civil remedies available for violations of the usury statutes. Although the earliest New Jersey usury statutes provided that usurious contracts were void, the legislature subsequently repealed those provisions. The court in *Schuran* therefore concluded that it was inappropriate to permit a remedy that the legislature had repealed.

In this case, by contrast, the New Jersey legislature does not appear to have addressed the issue of civil remedies for commercial bribery. The statute defines the prohibited behavior and provides only for criminal penalties. Unlike the usury statutes at issue in *Schuran*, there is no indication here that the New Jersey legislature intended to abolish civil consequences for a party who commits commercial bribery in the course of performing a contract. As the Superior Court of New Jersey explained in *Jaclyn*, the commercial bribery defense to a contract action finds it origins in common law, 406 A.2d at 482. When the New Jersey legislature enacted the criminal statute against this common law backdrop, the most sensible inference, we believe, is that the legislature intended only to codify a definition of the offense and to specify the attendant criminal penalties, but not to abolish the commercial bribery defense in civil contract actions. Thus, we discern no error in the District Court's dismissal of PSCC's contract claims.

12

III

Although the District Court specifically held that PSCC and Delavau were not *in pari delicto* as to the commercial bribery, it found that PSCC's commercial bribery tainted the entire contract, and that Delavau would be unjustly enriched by a recovery on its counterclaims, in light of the fact that it was a sophisticated party and had "profited handsomely from its business dealings with [Lederle]."

Where a contract is tainted by illegality in its terms or in the mode of performance elected by one of the parties, New Jersey courts inquire into whether the illegality can be excised from the contract and the remainder enforced. *See, e.g.*, *Schuran, Inc. v. Walnut Hill Assocs.*, 606 A.2d 885, 888 (N.J. Super. Law. Div. 1991) (enforcing a usurious contract after excising the illegal portion of the interest); *Naseef v. Cord, Inc.*, 216 A.2d 413 (N.J. Super. App. Div. 1966) (declining to enforce an illegal contract where the illegal portion was not severable from the whole); 5 *Williston on Contracts* § 12:3, at 690-94 (4th ed. 1998) ("[T]he courts enforce the severable parts of an illegal divisible agreement where the unlawfulness does not permeate the whole, and even in the case of indivisible contracts, they strive to segregate and to uphold if possible such portions as may be legal."). The District Court correctly held that PSCC's commercial bribery tainted the portion of the contract in which PSCC agreed to negotiate contracts between Lederle and Delavau in exchange for fees from Delavau. Delavau indeed "profited handsomely" from this arrangement, and was not entitled to recover through disgorgement the fees it paid to PSCC. *See McConnell v. Commonwealth Pictures Corp.*,

13

166 N.E. 2d 494, 499 (N.Y. App. 1960) ("Here, the contract between plaintiff and defendant was perfectly legal, and defendant is seeking to avoid its obligations under the contract of which it has reaped the benefits for some 12 years by asserting the illegality of a different and subsequent agreement between plaintiff and a third party. This it should not be permitted to do."); *Remsen Partners, Ltd. v. Stephen A. Goldberg Co.*, 755 A.2d 412, 420-21 (D.C. 2000) (declining to require an unlicensed broker to disgorge fees paid to it where there was no bad faith involved and where the party hiring the broker profited from the broker's services). Before us, Delavau concedes that the District Court was correct in denying it disgorgement, but notes that it brought counterclaims for both disgorgement and breach of contract, and argues that it should not be prevented from going forward on its breach of contract counterclaim, in which it seeks to enforce the term of the contract entitling it to "2% of any sales earned by PSCC by virtue of brokering or placing [Lederle's] business with another supplier." In our view, Delavau is correct, and this portion is severable from the remainder of the contract. It is undisputed that Delavau did not profit from PSCC's placement of Lederle's business with other companies, and that Delavau was harmed by PSCC's failure to honor that provision. As such, Delavau would not be unjustly enriched if it were allowed to enforce that provision of the contract and to receive from PSCC what it bargained for.[6] We will therefore reverse the District

---

[6]The District Court cited several cases for the proposition that public policy weighed against allowing Delavau to recover on its counterclaims. Those cases involved considerations not relevant here. *In re Independent Clearing House Co.*, 77 B.R. 843 (D. Utah 1987) involved a suit by investors in a Ponzi scheme against bankrupt trusts that had

14

Court's judgment on Delavau's breach of contract counterclaims and remand for adjudication of those claims. Once those claims are adjudicated, the District Court should revisit the question whether Delavau is entitled to contractual attorney fees under New Jersey law. *See N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848-49 (N.J. 1999). The judgment on PSCC's claims will be affirmed.

---

served as clearinghouses for the funds of the scheme. *Id.* at 845-56. Under the investors' contracts with the trusts, the investors were entitled to receive certain returns in excess of their initial investment. The District Court allowed the investors to recover their initial investment, but did not allow them to recover beyond that because any such recovery would necessarily come at the expense of other victims of the same Ponzi scheme. *Id.* at 858. In this case, there has been no showing that any recovery to Delavau from PSCC would come at the expense of an innocent party. *Dalton, Dalton, Little, Inc. v. Mirandi*, 412 F. Supp. 1001 (D.N.J. 1976), and *Lothar's of California v. Weintraub*, 601 N.Y.S.2d 231 (1993) both involved contractual arrangements that were themselves illegal—*Mirandi* involved a contract between an individual and an unlicensed architect, and *Weintraub* involved an accounting contract with an illegal contingent fee. Here, however, it is PSCC's chosen mode of performance rather than a term of the contract itself that is illegal, and there is no public policy reason to penalize Delavau where there has been no showing that it was in any way at fault for PSCC's illegal conduct.

15