GARY MELIUS et al., Respondents-Appellants, v WILBUR F. BRESLIN, Respondent, et al., Defendants, and CARMEN's PLAZA, LLC, et al., Appellants-Respondents. [846 NYS2d 645]—

In an action, inter alia, to recover the proceeds of a loan, the defendants Breslin Realty Development Corp., Carmen's Plaza, LLC, Carmen's Plaza Associates, Breskel Associates, Breskin Realty, East Meadow Associates, Doyle Realty, LLC, estate of Robert Frankel, Meadowridge Realty Corp., Rochester Associates, LP, Riverwood LaPlace Associates, LLC, Breskin Brooklyn Corp., Huntington Square Associates, LP, and Bay Harbour As-

sociates, LP, appeal from so much of a judgment of the Supreme Court, Nassau County (LaMarca, J.), entered August 7, 2006, as, after a nonjury trial, is in favor of the plaintiffs and against them, jointly and severally, in the principal sum of $362,500, and the plaintiffs separately appeal from so much of the same judgment as, in effect, is in favor of the defendant Wilbur F. Breslin and against them dismissing the complaint insofar as asserted against that defendant.

Ordered that the judgment is modified, on the law and the facts, by deleting the provision thereof which is in favor of the plaintiffs and against the defendants Breslin Realty Development Corp., Carmen's Plaza, LLC, Carman's Plaza Associates, Breskel Associates, Breskin Realty, East Meadow Associates, Doyle Realty, LLC, estate of Robert Frankel, Meadowridge Realty Corp., Rochester Associates, LP, Riverwood LaPlace Associates, LLC, Breskin Brooklyn Corp., Huntington Square Associates, LP, and Bay Harbour Associates, LP, jointly and severally, in the principal sum of $362,500, and substituting therefor a provision which is in favor of those defendants and against the plaintiffs dismissing the complaint insofar as asserted against those defendants; as so modified, the judgment is affirmed insofar as appealed from, with one bill of costs payable to the defendants.

"Upon review of a determination rendered after a nonjury trial, this Court's authority 'is as broad as that of the trial court,' and this Court may 'render the judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses' " (*Betsy Meyer Assoc., Inc. v Lorber*, 42 AD3d 509 [2007], quoting *Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]). The trial court's conclusion that the plaintiffs loaned the appellants the sum of $362,500 and that the defendant Wilbur F. Breslin (hereinafter Breslin) promised to repay that sum is contrary to the weight of the credible evidence and should not be sustained. Further, the bargain described by the plaintiff Gary Melius constitutes an illegal bargain which is unenforceable (*see McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465 [1960]).

According to Stanley Shaw, who was the attorney for both Breslin and the plaintiffs, five or six properties owned by Breslin's business entities (hereinafter the Breslin entities) went into foreclosure, and the Supreme Court appointed Joseph P. Famighetti as receiver of the properties. The plaintiff Gary Melius was hired as managing agent for the receiver. By the time the trial in this action was conducted, however, Famighetti had died.

Melius testified at the trial that he and Shaw met with Breslin at Breslin's request. According to Melius, Breslin said at that meeting that if Melius did not help him out with his legal fees, Breslin would file a petition pursuant to chapter 11 of the United States Bankruptcy Code on behalf of the Breslin entities and thereby end the receiverships. Melius claimed that he and Breslin agreed that monthly payments, each in the sum of $25,000, would be paid by Melius directly to Shaw, as Breslin's attorney, based upon the fee Melius was receiving for his services as a managing agent. Melius claimed that terms of repayment were discussed and "whatever I would layout [sic] would be paid to me after the receivership was resolved."

Melius's corporation General Holding Corp. made the payments directly to Shaw's law firm. When Melius realized he "didn't have that kind of cash," he reduced the payments from the sum of $25,000 per month to the sum of $12,500 per month, and stopped the payments altogether when he "became very concerned about Mr. Breslin's intentions."

At the trial, when Shaw was asked if those payments constituted a "kickback," he replied, "I think the word kickback was [sic] a little bit overstated." However, he acknowledged that he characterized the payments as a "kickback" during his examination before trial.

The existence of the alleged loan is not supported by documentary evidence. Melius and his business entities did issue checks directly to Shaw's law firm—first in the sum of $25,000 and later in the sum of $12,500—but there is no indication on the memo lines of these checks that they were paid for the benefit or on behalf of Breslin. Since the plaintiffs and Breslin were both clients of Shaw, Breslin asserted at the trial that the payments could have been payments representing the plaintiffs' indebtedness to Shaw. Breslin denied that he had any arrangement with Melius for Melius to pay his legal bills.

The documentary evidence in the record established that the checks received by Shaw's law firm from Melius were initially applied to the account of Melius's corporation, General Holding Corp. The head of bookkeeping for the law firm, who was identified as "Jane" at the trial, ordered that the credit to General Holding Corp. be "reversed." Shaw's secretary testified at the trial that the only time she saw "Jane" do a "reverse" was in the instant matter.

A key witness for the plaintiffs was the former chief financial officer of the Breslin entities, who testified at the trial that he acted as an intermediary between Breslin and Shaw's law firm, advising the law firm as to how Breslin was allocating the pay-

ments amongst his various business entities. However, his credibility is suspect, since he was fired by Breslin, and sued by Breslin and the defendant Breslin Realty Development Corp. for substantial damages prior to the trial.

In view of the foregoing, the weight of the credible evidence does not support the plaintiffs' contention that Melius loaned Breslin the sum of $362,500 and that Breslin promised to repay that sum. At best, the plaintiffs established that there was a kickback scheme, which was illegal and unenforceable (*see* Penal Law § 180.00; *McConnell v Commonwealth Pictures Corp.*, 7 NY2d 465 [1960]). Since Melius has unclean hands, any claim he may have against Breslin and/or the Breslin entities based upon the equitable remedy of unjust enrichment is barred (*see Matter of Lago v 87-10 51st Ave. Owners Corp.*, 301 AD2d 527 [2003]; *Kleeger v Kleeger*, 261 AD2d 587 [1999]).

The parties' remaining contentions either are without merit or need not be reached in light of our determination. Goldstein, J.P., Fisher, Carni and McCarthy, JJ., concur.