22-1834-cv
*Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of March, two thousand twenty-four.

PRESENT:
> JOHN M. WALKER, JR.,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.[1]

---

CICEL (BEIJING) SCIENCE & TECHNOLOGY CO., LTD.,

> *Plaintiff-Appellant*,

> v.                                                                22-1834-cv

MISONIX, INC.,

> *Defendant-Appellee*,

STAVROS VIZIRGIANAKIS, SCOTT LUDECKER, JOHN SALERNO, RICHARD ZAREMBA, JOHN W.

---

[1] Judge José A. Cabranes, originally assigned to the panel, recused himself from consideration of this matter. The two remaining members of the panel, who are in agreement, have decided this case in accordance with Second Circuit Internal Operating Procedure E(b). *See* 28 U.S.C. § 46(d); *cf. United States v. Desimone*, 140 F.3d 457, 458 (2d Cir. 1998).

GILDEA, CHARLES MINER, III, PATRICK
McBRAYER, THOMAS M. PATTON,

*Defendants*.

---

FOR PLAINTIFF-APPELLANT:               MARIO BIAGGI JR., Law Offices of Mario Biaggi
                                       Jr. (Nicholas R. Tambone, Blank Rome LLP, *on
                                       the brief*), New York, New York.

FOR DEFENDANT-APPELLEE:                RICHARD S. CLEARY, JR. (Simon A. Latcovich,
                                       Alexander S. Zolan, Elizabeth R. Peled, *on the
                                       brief*), Williams & Connolly LLP, Washington,
                                       District of Columbia.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gary R. Brown, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on July 20, 2022, is **AFFIRMED**.

Plaintiff-Appellant Cicel (Beijing) Science & Technology Co., Ltd. ("Cicel"), a Chinese distributor of medical devices, appeals from an award of summary judgment on its claims of breach of contract and defamation in favor of Defendant-Appellee Misonix, Inc. ("Misonix"), a New York-based medical device manufacturer. We review an award of summary judgment *de novo*, viewing the facts "in the light most favorable to the losing party," *Bethpage Water Dist. v. Northrop Grumman Corp.*, 884 F.3d 118, 124 (2d Cir. 2018), and affirm when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a); *see also Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995) (applying the same standard to grant of summary judgment on an affirmative defense). In so doing, we assume the parties' familiarity with the underlying facts, procedural history, and

issues on appeal, which we reference only as necessary to explain our decision to affirm.[2]

## I.       Breach of Contract

Cicel's breach-of-contract claim arose from its contract with Misonix to distribute medical devices to Chinese hospitals.  The district court concluded that Misonix was entitled to summary judgment on Cicel's breach-of-contract claim because Misonix had proven its defense of illegal performance under New York law—namely, that its contract with Cicel was unenforceable because Cicel had paid bribes to Chinese surgeons in order to induce them to purchase Misonix products at inflated prices. *See Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 581 F. Supp. 3d 454, 456–59 (E.D.N.Y. 2022).  Cicel argues that the district court made two fundamental errors in applying the illegality defense.  First, Cicel contends that New York law requires a party invoking the defense to prove that the plaintiff's conduct violated a particular statute or common-law proscription, and that Misonix failed to make this specific showing.  Second, Cicel asserts that the factual record—consisting primarily of emails and deposition testimony of individuals at the two companies—presents a genuine dispute of material fact about whether Cicel paid such bribes.  As set forth below, we find Cicel's arguments unpersuasive.

In a diversity action such as this, we determine the substantive state law *de novo*, affording "the greatest weight to decisions of" the state's highest court. *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997).  Where the state's highest court is silent on an issue, we "carefully . . . predict how [it] would resolve the uncertainty or ambiguity," considering decisions of the state's lower courts. *Id.* (internal quotation marks and citations omitted).  Under New York law, it is

---

[2]  Neither party disputes that New York law governs the claims at issue here.

"well settled" that a party asserts a complete defense to breach of contract when it proves that the contract, "although legal in [its] inducement and capable of being performed in a legal manner, [has] nonetheless been performed in an illegal manner[.]" *Prote Contracting Co. v. Bd. of Educ. of N.Y.C.*, 230 A.D.2d 32, 40 (1st Dep't 1997) (citing *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 470–71 (1960)). The New York Court of Appeals has stated that this defense applies only when: (1) "the illegal performance of a contract originally valid takes the form of commercial bribery or similar conduct," and (2) "the illegality is central to or a dominant part of the plaintiff's whole course of conduct in performance of the contract." *McConnell*, 7 N.Y.2d at 471.

The illegal-performance defense is available even when the non-breaching party has violated a common-law rule, rather than a particular statute. *McConnell* stated:

> The issue is not whether the acts alleged in the defense[] would constitute the crime of commercial bribery under section 439 of the Penal Law . . . . We are not working here with narrow questions of technical law. We are applying fundamental concepts of morality and fair dealing not to be weakened by exceptions. . . . Consistent with public morality and settled public policy, we hold that a party will be denied recovery even on a contract valid on its face, if it appears that he has resorted to gravely immoral and illegal conduct in accomplishing its performance.

7 N.Y.2d at 470–71. As the Appellate Division explained in *Prote Contracting*, the rule in *McConnell* "adopt[s] the [Restatement's] doctrine of illegal performance," 230 A.D.2d at 40, which provides that "[a] bargain is illegal . . . whether the law is statutory or is developed by the courts for reasons of public policy" and notes that it "does not list all kinds of illegal bargains" because "[s]uch a list is indeed impossible, for the variety of agreements that can be made in violation of statutes *or of rules of the common law* is almost infinite," Restatement (First) of Contracts § 512, cmt. a, b (Am. L. Inst. 1932) (emphasis added). This doctrine is consistent with

4

the New York Civil Practice and Rules, which provide for the pleading of an illegality affirmative defense by "facts showing illegality either by statute or common law." N.Y. C.P.L.R. § 3018(b).

Under New York common law, a party commits commercial bribery when it (1) "confer[s] a benefit upon [another party's] employee," (2) "without [that party's] consent," and (3) "with the intent to influence the employee's conduct." *Niagara Mohawk Power Corp. v. Freed*, 265 A.D.2d 938, 939 (4th Dep't 1999). Thus, Misonix's burden is to demonstrate that Cicel resorted to "commercial bribery or similar conduct" in performing the contract, and that such conduct was "central to or a dominant part of" its performance of the contract as a whole. *McConnell*, 7 N.Y.2d at 471.

Here, even viewing the facts in the light most favorable to Cicel, Misonix has shown that there is no dispute of material fact on either element, and that it is therefore entitled to summary judgment on its illegal-performance defense.[3] The record contains five emails in which Cicel President May Lee, or English-speaking employees writing on her behalf, explain that the Chinese medical industry is characterized by "hidden rules," "bribes in orthopedics," "a large demand of under-table deals," and "many businesses under the counter." App'x at 367, 371, 520.[4] These emails describe a context in which individuals are "alwa[ys] seeking . . . money and benefit, from top to bottom," *id*. at 520, and, more specifically, the surgeons making purchasing decisions on behalf of hospitals "prefer incentive sales" because they "usually get a low salary," *id*. at 371. The emails explain that, "in such cases, [Cicel] will definitely seek for [*sic*] cooperation with sub-

---

[3] Cicel does not contest the centrality element of the defense. *See* Appellant's Reply Br. at 27.

[4] "App'x" refers to the Appendix filed at docket numbers 48–56.

5

dealers or other sources. . . . [who] have more close connections in their local hospitals, and [who] know what will be the best way to take care of [Cicel's] customers." *Id.* at 520; *see also id.* at 525 ("there are many deals under the table, which Cicel could not handle by itself, so we have to seek for [*sic*] partners in such a situation"). These emails overwhelmingly support Misonix's assertion that Cicel's execution of the distribution contract "t[ook] the form of commercial bribery or similar conduct," and that this "illegality [wa]s central to or a dominant part of [Cicel's] performance of the contract." *McConnell*, 7 N.Y.2d at 471; *see also* App'x at 294 (deposition of May Lee agreeing that "under the table" "does not have a good meaning" and "there may be the concept of corruption here").

Cicel argues that these emails can reasonably be viewed as evidence of the opposite: that Cicel sought to *avoid* paying bribes by working only with legitimate, law-abiding partners, because (1) the emails were written by non-native English speakers, and (2) both May Lee and Misonix's then-CEO Michael McManus testified at deposition that this was how they understood certain of the emails quoted above.[5] Thus, Cicel contends that the district court made impermissible credibility assessments in granting summary judgment. We disagree.[6]

---

[5] Misonix notes that McManus was not apprised of the results of the investigation by Misonix's Audit Committee that resulted in the termination of the contract and McManus' departure from the company. McManus stated that had he been aware of certain facts uncovered by the investigation, he would have been concerned and potentially reconsidered the contractual relationship with Cicel.

[6] In support of its illegality defense, Misonix also points to, *inter alia*, evidence in the record that, in 2014, the Chinese government fined Cicel for bribery in connection with payments made from 2010 to 2011 to an individual at a hospital where Cicel later marketed Misonix products. Cicel contests whether evidence of this fine is admissible. We need not address this issue because we find the other evidence, summarized above, sufficient to support summary judgment for Misonix.

Although Cicel attempts to downplay the substance of the emails in piecemeal fashion, we are required to look at the record, including the emails, as a whole. *See Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012) (explaining that a court ruling on a motion for summary judgment "may not properly focus on individual strands of evidence and consider the record in piecemeal fashion; rather, it must consider all of the evidence in the record, reviewing the record taken as a whole" (internal quotation marks and citations omitted)). Moreover, beyond the emails discussed above, there was evidence in the record, the validity of which is not in dispute, as to which no witness was able to provide any explanation other than that Cicel was engaged in bribery. In a September 26, 2014 email written by a Cicel employee to May Lee, and addressed (but never sent) to McManus, the Cicel employee discusses efforts to market BoneScalpel, a Misonix product, and writes:

> As you may know, [Cicel sub-distributor] APD has good experiences on handling business under the table. Sometimes, it's very helpful, but sometimes it could be very dan[g]erous. So for big cities, such as Shanghai and Guangzhou, we could not take the risk. We would rather be safe. *But for some small place, where under table business is very popular and well accepted, APD may help, or may be we could cooperate with them on some specific project.* But we should be very careful about the territory and we should have full supervision for their behaviors during the whole process, which we believe it's best for our mutual benefit. [*sic*]

App'x at 529 (emphasis added). The only reasonable interpretation of this email is that Cicel was willing to use a sub-distributor to pay bribes in small cities with weaker anti-corruption controls, but was concerned about using a sub-distributor to pay bribes in large cities where the risk of detection was greater.

Notwithstanding its clear meaning, Cicel asserts that this email indicates "Cicel's refusal to use APD in the large cities and only in the smaller cities if Cicel can have full supervision over

7

them to make sure that APD does not engage in illegal activity." Appellant's Br. at 47; *see also* Appellant's Reply Br. at 15. However, when presented with this email at her deposition, May Lee provided no such interpretation or explanation. Instead, she sought to blame Misonix for encouraging Cicel to use APD, stating that McManus had pressured Cicel to use APD as a sub-distributor in "big territories, including Beijing." App'x at 298–300. In any event, the alternate explanation Cicel puts forward in its briefs—that Cicel was willing to engage APD only in small markets where it could control APD's actions—is not supported by the plain language of the email or by any other evidence in the record, even when viewing that evidence in the light most favorable to Cicel. When the September 26, 2014 email is viewed alongside this full record, including the other emails written by Cicel employees and two emails written by David Battles, Misonix's former director of sales for the Asia/Pacific region, which detail Cicel's practice of bribing surgeons to sell Misonix products, the only conclusion that a jury could rationally reach is that Misonix has demonstrated, beyond genuine dispute, that Cicel engaged in "commercial bribery or similar conduct" in performing the contract. *McConnell*, 7 N.Y.2d at 471.[7]

Accordingly, the district court properly granted summary judgment in favor of Misonix on the breach-of-contract claim.

---

[7] The fact that the Department of Justice and the Securities and Exchange Commission issued declination letters to Misonix regarding the conduct at issue, after Misonix investigated and reported the conduct, and never charged Cicel with any crime or violation provides insufficient basis for reasonably inferring that Cicel did not engage in commercial bribery or similar conduct and does not undermine the evidence in the record indicating otherwise.

## II. Defamation

Cicel also argues that the district court erred in granting summary judgment to Misonix on its defamation claim, which is based entirely on Misonix's statement, in an 8-K filing, that Misonix "may have had knowledge of certain business practices of the independent Chinese entity that distributes its products in China, which practices raise questions under the Foreign Corrupt Practices Act ('FCPA')."[8]  No. 2:17-cv-01642-GRB-LGD, ECF No. 183-18 at 3.

Under New York law, a plaintiff in a defamation claim must prove "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  "[T]ruth is a complete defense to a defamation claim." *Birkenfeld v. UBS AG*, 172 A.D.3d 566, 566 (1st Dep't 2019).

In support of its contention that the district court erred in granting summary judgment on its defamation claim, Cicel cites the fact that Misonix informed federal investigators that, as of September 2016, "Misonix had not uncovered . . . evidence sufficient to establish that an 'offense' had been committed" under the FCPA.  App'x at 507–08.  This statement, however, is consistent with Misonix's 8-K, which stated only that "certain business practices" of its Chinese counterpart "raise[d] questions under the [FCPA]."  No. 2:17-cv-01642-GRB-LGD, ECF No. 183-18 at 3.  It can simultaneously be true that (1) Misonix lacked sufficient evidence to prove that an offense had been committed under the FCPA, and (2) the available evidence nonetheless "raise[d] questions"

---

[8]  The FCPA prohibits bribing foreign officials for the purpose of "obtaining or retaining business for or with, or directing business to, any person."  15 U.S.C. §§ 78dd-2(a)(1)(B), 78dd-3(a)(1)(B).

under the statute.[9]  *Id.*  In short, Cicel's email admissions, combined with Misonix's actions of launching an internal investigation, negotiating its CEO's departure, and self-reporting to regulators, establish beyond any genuine dispute that, at a minimum, Misonix "*may* have" had knowledge of certain business practices by Cicel that "*raise[d] questions* under the [FCPA]." *Id.* (emphasis added).  On this record, even viewing the facts most favorably to Cicel, no rational jury could find otherwise.  Therefore, summary judgment on the defamation claim in Misonix's favor was warranted.

*                    *                    *

We have considered Cicel's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[9]  Misonix points out, for instance, that Cicel had taken the position, independent of any evidence of bribery, that Cicel "is not a 'domestic concern' and therefore is not subject to the FCPA."  No. 2:17-cv-01642-GRB-LGD, ECF No. 13 at 9.